656 So.2d 1067 (1995)
Calvert Paul DURAPAU, Jr.
v.
Melvin JENKINS, Charity Hospital of New Orleans, DePaul Hospital, Southeast Hospital, West Jefferson Mental Health Center, and Colonial Apartments.
No. 95-CA-120.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
Robert T. Myers, New Orleans, for plaintiff-appellant.
Christopher C. Friend, E. Ross Buckley, New Orleans, Jay C. Zainey, Leonard M. D'Angelo, Metairie, for defendants-appellees.
Before GAUDIN, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This is an appeal by Calvert Durapau, Jr., plaintiff-appellant, from a summary judgment dismissing from his delictual action a psychiatric hospital. He alleged in his petition that the hospital negligently discharged from its care a dangerous patient who stabbed him some four months after being released. Based on the undisputed facts of the case, the trial judge determined that the hospital was not liable as a matter of law and entered judgment accordingly. We agree with the trial judge, and therefore affirm the judgment.
The undisputed facts are as follows. On October 8, 1990, Durapau was attacked and stabbed in the neck by Melvin Jenkins at an apartment complex. The weapon struck plaintiff's cervical spine, apparently injuring the spinal cord with consequent debilitating paralysis. Jenkins was later convicted of aggravated battery and sentenced to five years imprisonment. Durapau brought the present action for damages against Jenkins, the apartment complex and its owners, and several hospitals which had previously treated Jenkins for mental problems.
*1068 Jenkins had been treated for a mental condition, diagnosed generally as paranoid schizophrenia, for a number of years by at least four mental health institutions. The latest three hospitalizations were at HCA Health Services of Louisiana, Inc., d/b/a DePaul Hospital (the only defendant at issue here) during April and May of 1990, the last being from May 16 through May 29. On each of these occasions he had been brought to the hospital by sheriff's deputies in compliance with orders for protective custody issued by the coroner in response to requests made by Jenkins' mother. She defined his behavior as being generally belligerent, with both suicidal and homicidal tendencies, and the custody orders recited these allegations. However, in none of these recitations does any threat to Durapau appear, and there is no allegation anywhere in plaintiff's suit that his name was ever mentioned during any treatments at the defendant hospital. Neither is there any allegation or inference that Jenkins had ever threatened any other particular person, or ever injured anyone, prior to the stabbing at issue here.
Although Jenkins had been brought to DePaul involuntarily on each occasion, once there he consented to treatment and was thus admitted voluntarily. During these treatments Jenkins was placed on medication and his symptoms for the most part dissipated. Dr. Lancaster, the designated representative of the hospital, stated in deposition that the records of treatments showed that as long as Jenkins remained on his medication he was not dangerous to himself or others, or otherwise so mentally disabled as to need confinement in an institution. He pointed out that Dr. Kailas was the psychiatrist who actually treated Jenkins, and authorized his discharge. He further explained that Kailas, although employed by the hospital for five to ten hours of administrative work per week, nonetheless was acting independently as a psychiatrist in treating Jenkins and would have to look directly to Medicare, rather than the hospital, for payment for these services. He also noted that Jenkins' family had been counseled about insuring that he continue his medication upon release.
On these undisputed facts, the trial judge granted a motion for summary judgment urged by the hospital. In his reasons for judgment he applied the duty-risk analysis mandated for negligence actions by Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), and thus made the following four-step sequential inquiry:
1. Was DePaul's action or inaction a cause-in-fact of Durapau's injury; was it a substantial factor in bringing about his harm?
2. Did the risk and harm encountered by Durapau fall within the protection of a legal duty owed to him by DePaul?
3. Was DePaul negligent in its duty owed to Durapau?
4. Was Durapau damaged or injured by DePaul's conduct?
He concluded at the second step that "[it] cannot be said that the harm inflicted upon Durapau by Jenkins fell within the legal protection owed to Durapau by DePaul," and therefore dismissed plaintiff's claims against the hospital. Durapau now brings this appeal. For the following reasons, we affirm the judgment.
The trial judge properly applied the duty-risk analysis to this action alleging negligent release of a psychiatric patient, Sanchez v. State Department of Health and Human Resources, 506 So.2d 777 (La.App. 1st Cir.1987). However, in this court's opinion the case could have been resolved at step one of the inquiry, i.e. whether any actions of DePaul were a substantial factor in bringing about Jerkins' attack on Durapau. The undisputed facts show that the hospital released Jenkins on recommendation of his treating psychiatrist, who consulted with his family as to the need for him to take his medication. Over four months later the attack on Durapau occurred, allegedly because Jenkins had stopped taking his medicine and once more became belligerent. In this circumstance, there is simply no causal connection between the actions of the hospital in allowing Jenkins to leave its premises four months before on recommendation of his treating psychiatrist, and his subsequent attack on plaintiff.
*1069 Moreover, even were it assumed that there was some causal connection between the release and the injury, we further point out, as the trial judge concluded, that the second part of the inquiry would also not be met. Concerning the duty of a psychiatrist to warn third parties about dangerous mental patients, and at the same time to protect the confidentiality of the patient-therapist relationship, the Legislature enacted La.R.S. 9:2800.2, which at the time of this incident pertinently provided:
A. When a patient has communicated an immediate threat of physical violence against a clearly identified victim or victims, coupled with the apparent intent and ability to carry out the threat, ... a psychiatrist... treating such a patient and exercising reasonable professional judgment, shall not be liable for a breach of confidentiality for warning of such threat or taking precautions to provide protection from the patient's violent behavior.
B. A ... psychiatrist's duty to warn or to take reasonable precautions to provide protection from violent behavior arises only under the circumstances specified in Subsection A of this Section. This duty shall be discharged by the ... psychiatrist if he makes a reasonable effort to communicate the immediate threat to the potential victim or victims and to notify law enforcement authorities in the vicinity of the patient's or potential victim's residence (emphasis added).
Thus, before the duty of a psychiatrist to warn third parties about possible violent behavior of a patient even arises, the patient must have made a threat to a clearly identifiable victim.
It is undisputed that Jenkins never made any such threat against Durapau, or indeed against any other person, to Dr. Kailas. Nor is it alleged that Jenkins had ever attacked or injured anyone else. Given these facts, Dr. Kailas had no duty to warn or take other precautions to protect third persons, and indeed, because no threats to any identifiable person were ever made, she was precluded by patient-therapist confidentiality from discussing his condition with third parties.
Plaintiff does not assert otherwise as to the psychiatrist, and indeed she is not a party defendant here. He does urge, however, that the hospital could still be liable for negligently releasing Jenkins, notwithstanding the operation of La.R.S. 92800.2. His argument, as we understand it, is that the statute would not protect a hospital if a patient escaped, was mistakenly released, or was allowed to leave against a treating psychiatrist's recommendations. This latter circumstance was present in Hines v. Bick, 566 So.2d 455 (La.App. 4th Cir.1990). There, the treating psychiatrist recommended that the patient be confined in the "lock down unit" but instead of doing so, the hospital let him walk out of the facility. He killed a third party the same night. On appeal, a summary judgment dismissing the psychiatrist was affirmed based on La.R.S. 9:2800.2, because the patient had never made threats toward anyone. The plaintiff was allowed to maintain the suit against the hospital, presumably on the theory that it was negligent in allowing the patient to leave against the doctor's orders, but the eventual outcome of that matter is unknown.
In the present case, no such circumstances exist. There is no allegation that the hospital acted contrary the treating psychiatrist's recommendations or permitted Jenkins to escape, or otherwise leave without proper authorization. Rather, it is undisputed that he was released because the treating psychiatrist so recommended. In effect, the hospital made no decision, one way or the other, as to Jenkins' release, but instead followed the decision of the treating psychiatrist. Further, there are no allegations or evidence to remotely suggest that the hospital was negligent in some way in relying on the recommendation of Dr. Kailas. In these circumstances, the hospital breached no duty owing to Durapau to protect him from the injury he suffered at the hands of Jenkins.
Plaintiff finally argues that the trial judge placed too much emphasis on the four month time lapse between the alleged negligent release and the injury. He cites in that regard Wilson v. Dept. of Public Safety and Corrections, 576 So.2d 490 (La.1991), a case involving an armed robbery committed by an escaping *1070 convict thirteen days after breaking out of prison. While it is true that the court disapproved of any mechanical application of passage of time as breaking the chain of causation, the actual ruling of the case is that the inquiry as to liability is not how much time has intervened, but whether the injury occurred during the escape or was an integral part of it. In affirming the trial court's determination that the state was liable, the court pointed out that the robbery took place only a few miles from the prison, and food, money, weapons, and the victims' truck were taken, all of which objects were to be used by the escapee to continue his flight from the state. In the present matter, not only was there no escape or improper release of the patient, but there was absolutely no connexity between Jenkins' release and his attack on plaintiff over four months later. We therefore reject this argument as well.
For the foregoing reasons, the summary judgment in favor of HCA Health Services of Louisiana, Inc., d/b/a DePaul Hospital, is hereby affirmed.
AFFIRMED.