722 So.2d 1 (1998)
Halic James FOREMAN, Debra Sue Gaspard and Brian David Foreman
v.
DANOS AND CUROLE MARINE CONTRACTORS, INC.
No. 97 CA 2038.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Writ Denied December 18, 1998.
*2 James J. Zito, Baton Rouge, LA, and John T. Bennett, Marksville, LA, Attorneys for Plaintiffs-Appellants Halic James Foreman, Debra Sue Gaspard, and Brian David Foreman.
Philip E. Henderson, Houma, LA, Attorney for Defendant-Appellee Danos and Curole Marine Contractors, Inc.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
WHIPPLE, J.
This is an appeal by two of the plaintiffs, Halic James Foreman and Brian David Foreman, from a judgment of the trial court granting summary judgment in favor of defendant, Danos and Curole Marine Contractors, Inc. Plaintiffs brought their suit for the wrongful death of their father and related damages against the defendant based on Louisiana law under a theory of respondeat superior. Finding that plaintiffs' claims were barred by the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act, the trial court granted summary judgment and dismissed defendant from plaintiffs' suit. Plaintiffs appeal.

BACKGROUND
The decedent, A.H. Foreman, ("Foreman"), was employed by Mobil Exploration & Producing U.S. Inc. ("Mobil") as a field facility operator on Mobil Oil Ship Shoal 182 C platform located in the Gulf of Mexico on the Outer Continental Shelf ("OCS"). At the time of the accident, and for some time prior, Mobil had contracted with the defendant, Danos and Curole Marine Contractors, Inc. ("Danos") to supply a welder, Robert Lege, and a welder's helper, John Givens, to service a Mobil field consisting of three platforms on the OCS. This field included the Ship Shoal 182 C platform ("182 C platform").
On July 12, 1994, Foreman sustained terminal injuries when he fell through a hole in the grating of the platform while he was performing duties in the course of his employment with Mobil. On the day in question, Foreman was the direct supervisor of operations on the 182 C platform and the chief Mobil supervisor on that particular platform. The two Danos employees were working on the 182 C platform and were prefabricating new hand rails when Foreman asked the two to help install an electric motor for the pipeline pumps. Foreman told the two Danos employees to remove a piece of grating from the platform deck in order to lower the motor through the hole. The hole in the grating had been cut three or four days prior to this operation, and the grating had been bolted in place since that time. The two Danos employees complied, unbolting and removing the grating to open the pre-cut passage to the lower deck.
Foreman started the crane to lift the motor, but relinquished control of the crane to W.J. Castay, another Mobil employee. Givens began giving hand signals to Castay, a Mobil crane operator, to help in lowering the fast line through the hole in the grating. Castay and Givens were watching the crane and each other when Foreman, who had been standing by the crane and facing the hole, walked from the crane and somehow stepped off into the opening. Foreman fell fifteen feet striking equipment below, then fell another five feet to the grating on the lower deck. These injuries resulted in Foreman's untimely death later that day.
Thereafter, plaintiffs, the children of A.H. Foreman, filed suit for wrongful death and personal injuries, against Danos, alleging liability under the theory of respondeat superior. Plaintiffs allege that the two Danos employees, John Givens and Robert Lege, while in the course and scope of their employment, were negligent in their conduct surrounding the removal of the grating and in failing to adequately warn others of the danger of the hole.
Danos filed a motion for summary judgment contending that regardless of negligence, the plaintiffs' suit in tort was barred by the exclusive remedy provisions of the *3 Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.A. § 901, et seq. Danos argued that the two Danos employees, Lege and Givens, were supplied to Mobil and had become the "borrowed employees" of Mobil. Thus, Danos contended, recovery in tort against it is barred by the provisions of 33 U.S.C.A. § 933(i).
The trial court granted defendant's motion for summary judgment. Two of the plaintiffs appeal, contending that the trial court erred: (1) in granting summary judgment in favor of defendant because there are genuine issues of material fact involved and (2) in finding that Robert Lege and John Givens were "borrowed employees" of Mobil. Thus, the precise issue for determination in this case is whether the decedent, Foreman, was a "person in the same employ" as Lege and Givens, pursuant to § 933(i) of the LHWCA.

THE OUTER CONTINENTAL SHELF LANDS ACT
Because the accident in this case occurred on the OCS off the Louisiana Gulf Coast, this case arises under and is governed by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.A. § 1331, et seq. The Outer Continental Shelf Lands Act provides that the LHWCA is applicable to "[the] disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources ... of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C.A. § 1333(b). Additionally, OCSLA declares that, to the extent that they are applicable and not inconsistent with federal laws or regulations, the civil and criminal laws of each adjacent state are to be applied as the law of the United States for artificial islands and fixed structures upon the OCS. 43 U.S.C.A. § 1333(a)(2)(A). Therefore, because the decedent was injured on a platform on the OCS, as a result of mineral exploration and/or production activities on the OCS, the issue presented by plaintiffs' action is essentially one of determining the extent of coverage under the LHWCA. 33 U.S.C.A. § 901, et seq.; Robertson v. Arco Oil and Gas Company, 766 F.Supp. 535, 537 (W.D.La.1991), aff'd, 948 F.2d 132 (5th Cir. 1991). If the present suit does not fall within the purview of the LHWCA regulation, then plaintiffs' wrongful death cause of action, based on Louisiana law, will lie, 43 U.S.C.A. § 1333(a)(2)(A).
Together, the OCSLA and the LHWCA provide a workers' compensation scheme for employees who, possibly, would not otherwise be covered by the state workers' compensation act nor by any federal compensation act. Mills v. Director, Office of Workers' Compensation Programs, 877 F.2d 356, 358 (5th Cir.1989)[1]. The LHWCA, like other workers' compensation acts, limits an employee's remedies for negligent injury by his employer and his fellow employees to the payments provided for under the act. 33 U.S.C.A. § 933(i).[2] Nevertheless, when a party other than the employer (or fellow employees) is liable for damages, the claimant may receive workers' compensation benefits from his employer and still bring an action against a third party. 33 U.S.C.A. § 933(i); Canty v. A. Bottacchi, S.A. de Navegacion, 849 F.Supp. *4 1552, 1556 (S.D.Fla.1994). "While `this provision limits an employee's rights, it ... at the same time expand[s] them by immunizing him against suits where he negligently injures a fellow worker.'" Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409, 1411 (5th Cir.1992), cert. denied, 507 U.S. 913, 113 S.Ct. 1264, 122 L.Ed.2d 660 (1993).
In the instant case, Danos claims that pursuant to 33 U.S.C.A. § 933(i), it is immune from suit by the plaintiffs because defendant's nominal employees, Lege and Givens, had become the borrowed servants of Mobil, and therefore, were "in the same employ" as Foreman.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir. 6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended LSA-C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA Inc., 29,835, pp. 4-5 (La.App.2nd Cir. 9/24/97); 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La.App. 3d Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
In 1997, by Act No. 483, the legislature again amended LSA-C.C.P. art. 966 to incorporate the federal summary judgment analysis. The 1997 amendment to LSA-C.C.P. art. 966 applies retroactively and is to be utilized by this court in assessing summary judgments granted prior to the effective date of the amendment. Morgan v. The Earnest Corp., 97-0869, p. 7 (La.App. 1st Cir. 11/7/97); 704 So.2d 272, 276, writ denied, 97-3031 (La.2/20/98); 709 So.2d 775.
Under the amended version of LSA-C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).

THE LHWCA AND THE BORROWED EMPLOYEE DOCTRINE
The U.S. Supreme Court has held that an employer will be liable under the doctrine of respondeat superior for negligence of an employee he has borrowed, under the "borrowed employee" doctrine. Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The U.S. Fifth Circuit has further defined the concept of a "borrowed employee" for purposes of LHWCA coverage and has enumerated nine factors to assess in determining whether an employee will be considered a borrowed servant of another. These factors are:

*5 (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work is being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?
Brown v. Union Oil Company of California, 984 F.2d 674, 676 (5th Cir.1993); Melancon v. Amoco Production Co., 834 F.2d 1238, 1244, modified, 841 F.2d 572 (5th Cir.1988); Gaudet v. Exxon Corporation, 562 F.2d 351, 355 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).
Although no single factor or combination is determinative, the five most important factors to consider in determining whether an employee will be considered a borrowed employee are the first, fourth, fifth, sixth and seventh.[3] The issue of whether a borrowed servant relationship exists is a matter of law for the court to determine; nevertheless, some cases involve factual disputes on the issue of borrowed servant status and require findings by a fact finder. Brown, 984 F.2d at 677; Ledet, 615 So.2d at 992.
The trial judge, in carefully articulated written reasons, evaluated the nine factors and determined that, based on the undisputed material facts in the evidence presented in support of the motion, Lege and Givens were borrowed servants of Mobil. On appeal, plaintiffs contend the trial court erred in concluding that Danos carried its burden of proof. Plaintiffs contend that the trial court improperly granted summary judgment by failing to properly appraise the weight of each factor. Specifically, plaintiffs disagree with the court's conclusions as to factors three, six, eight and nine. As the defendant notes in its brief, the undisputed material facts and analyses in this case are very similar to the circumstances set forth in Melancon.

WHO HAD CONTROL?
In the instant case, Mobil clearly exercised control over the Danos employees and their work. Michael Hanks, a Mobil employee, stated in his deposition that the Mobil supervisors, H.A. Foreman and/or Allen Theriot, determined what jobs the Danos employees needed to do and when to do them, and that there were no Danos supervisory personnel in the Mobil field. Further, Hanks stated that he did not believe that Lege or Givens had to check in with Danos before starting a new assignment. The deposition testimony of both Lege and Givens was the same regarding this point.
Although Danos required that Givens and Lege fill out safety meeting forms each week and turn these in to Danos, this requirement was a mere formality and not any true exercise of direct and immediate control over the work place or the work to be done. As attested to by Jerry Miller, a Danos manager, Danos expected Lege and Givens to report to work for Mobil and receive directions from that company; and Danos did not expect to provide any direction or supervision to these nominal employees. Both Lege and Givens provided general roustabout work that was supervised by Mobil; the fact that Lege also supplied welding skills that apparently no Mobil employee held, does not prevent a finding that Lege was a borrowed employee. Melancon, 834 F.2d at 1245.

*6 WHOSE WORK WAS BEING PERFORMED?
The Danos employees' work assisted the production operations of the Mobil field, whether doing welding or roustabout work. Mobil paid Danos for the hours that each man worked, and not according to the projects completed. Under the undisputed facts presented in the record, Mobil's work was being done by the Danos employees.

WAS THERE AN AGREEMENT, UNDERSTANDING OR MEETING OF THE MINDS BETWEEN DANOS AND MOBIL?
Plaintiffs' appeal is mainly founded on this factor. Plaintiffs argue that there was no evidence adduced in support of Danos' motion to establish a contractual agreement. We disagree.
The record indicates that the management and employees of Danos expected that Mobil would be giving instructions to Lege and Givens. It is undisputed that no Danos supervisory personnel were in the field, and it is clear that the Mobil supervisors felt free to ask and instruct the Danos employees to do whatever Mobil needed. Therefore, although the record contains no evidence of an express contract, written or otherwise, the reality at the worksite and the parties' activities in carrying out the work on the platforms show that there was at least a tacit understanding between Mobil and Danos. Thus, we find Danos sufficiently established a "meeting of the minds" as contemplated in the third factor inquiry.[4]

DID THE EMPLOYEES ACQUIESCE IN THE NEW WORK SITUATION?
This factor evaluates whether the employee had time to assess the risks of his new work situation and was willing to accept those risks and the new work conditions. Brown, 984 F.2d at 678. Here, Lege and Givens worked, ate, and slept on Mobil's platforms. Jerry Miller, a Danos manager, attested that Lege worked exclusively in this particular Mobil field for approximately three years and three months prior to the accident in question. Miller also stated that Givens had worked exclusively in the Mobil field for approximately three months prior to the accident. Although the period of time Givens had worked in this particular field was markedly shorter than the time Lege had worked, the federal Fifth Circuit has determined that "one month is a sufficient amount of time for [an employee] to appreciate the new work conditions." Brown, 984 F.2d at 678. We find that Danos met its burden of establishing that both Lege and Givens had spent sufficient time at the Mobil job site to asses their work situations, and undisputedly acquiesced in the new work conditions.

DID THE ORIGINAL EMPLOYER TERMINATE HIS RELATIONSHIP WITH THE EMPLOYEE?
This factor evaluates the lending employer's relationship with the employee while the borrowing occurs. Ledet, 615 So.2d at 994; Brown, 984 F.2d at 678. Contrary to plaintiffs' assertions, this factor does not, however, require a lending employer to completely sever its relationship with the employee. See Canty, 849 F.Supp. at 1558. In order to find that a relationship has been terminated, this factor requires that the nominal employer place no restrictions upon the employment conditions of its employees. Id.
In this case, Danos required that Lege and Givens hold safety meetings periodically to discuss the safest manner of performing a welding job and each week they filled out a safety meeting form to be turned into Danos. Other than the requirements regarding these safety meetings, Danos placed no restrictions on the employees' work conditions. As set forth by Lege in his deposition, the Mobil *7 employees would inform the Danos employees of the various safety regulations that applied to the various types of jobs they were required to do. Thus, while Danos did require that its employees fill out a safety meeting form each week, any other involvement by Danos with these employees was minimal. The employees were directed and supervised by the Mobil crew and worked with them as members of the Mobil platform crew on various jobs not involving welding at all. During their shifts, Lege and Givens lived on the Mobil platforms with the Mobil crew. There is no evidence in the record to show that Danos was more than minimally involved with Givens and Lege. Therefore, Danos satisfied its burden of proof as to this factor, under the undisputed material facts.

WHO FURNISHED THE TOOLS AND THE PLACE OF PERFORMANCE?
It is undisputed that the cutting torch and the welding machine on hand were furnished by Danos. Additionally, Danos offered certain training courses to its employees. However, it is also undisputed that Mobil furnished the place of performance, the platforms, and transportation to and from the platforms. The Danos employees received their meals and lodging from Mobil, as Danos did not pay for or provide employee meals or lodging. Additionally, Mobil furnished certain consumables (diesel fuel and oil) for the welding machines, in addition to fire-fighting equipment and gas-detecting "sniffers" for the welder or his helper to use during welding operations. Plaintiffs presented no other evidence to contradict what is described above.[5] We agree with the trial court that the undisputed facts concerning this factor also weighs in favor of finding a borrowed employee situation. Melancon, 834 F.2d at 1246.

WAS THE NEW EMPLOYMENT OVER A CONSIDERABLE LENGTH OF TIME?
Where the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding that the employee was a borrowed employee. However, the converse is not true, and employments of short duration will generally require a finding of neutrality as to this factor. Canty, 849 F.Supp. at 1558-1559 (finding neutral a three day job); See also Brown, 984 F.2d at 679 (finding neutral a one month employment); and Ledet, 615 So.2d at 994 (finding a one year employment did not bar finding a borrowed employee status).
In this case, Lege had worked exclusively at the Mobil field in excess of three years. Certainly, under this undisputed fact, this factor weighs heavily in favor of finding Lege was a borrowed servant. Givens, on the other hand, had only worked in the Mobil field for three months prior to the accident. Although the duration of Givens' employment was much shorter, we find that this factor is neutral as to Givens' status and does not bar a finding of borrowed servant status.

WHO HAD THE RIGHT TO DISCHARGE GIVENS AND LEGE?
Although Mobil did not have power to terminate the employment of Lege and Givens with Danos, it is undisputed that Mobil had the authority to terminate the services of the two men and to prevent them from working on the Mobil platforms. Thus, the undisputed facts showing the reservation of this authority to Mobil likewise support a finding of borrowed employee status. Brown, 984 F.2d at 679; Ledet, 615 So.2d at 994.[6]

*8 WHO HAD THE OBLIGATION TO PAY GIVENS AND LEGE?
It is undisputed that Danos paid Lege and Givens, and mailed their checks directly to them. Nonetheless, their pay was based on time tickets that had to be verified daily by Mobil. Additionally, Mobil designated if and when these employees could work overtime, and Danos had no input relative to any decision to allow the men to work additional days. In challenging the summary judgment, plaintiffs point out that Danos not only paid the men, but also paid for training for the men. We do not find the degree of training supplied by Danos, as set forth in the record, was of such a degree as to tip the scales in plaintiffs' favor on this factor. Accordingly, we find that under the undisputed material facts, this factor likewise favors a finding of borrowed employee status. Brown, 984 F.2d at 679;
In the instant case, the initial burden of proving entitlement to summary judgment was with Danos. In support of its motion, Danos introduced the accident investigation reports prepared by Mobil; pertinent portions of the depositions of Michael Hanks (a Mobil employee), John Givens and Robert Lege (both Danos employees); an affidavit by the special services manger employed by Danos; the work tickets for the Danos employees from January 1994 through August 1994; and the Danos invoices dated March 1994 through August 1994. Based on the evidence presented by Danos in support of its motion for summary judgment, we conclude that the trial court properly found that Givens and Lege were borrowed servants of Mobil.
Although plaintiffs submitted affidavits executed by Brian David Foreman and James Halic Foreman, two of the plaintiffs (and children of the decedent), these affidavits are of little evidentiary value, since most of the information attested to in the affidavits is not based on the affiants' personal knowledge as required by LSA-C.C.P. art 967. The "personal knowledge" requirement of LSA-C.C.P. art. 967 contemplates that the witness actually saw or heard that to which he attests, as distinguished from something he learned from some other person or source. Gardner v. Louisiana State University Medical Center Shreveport, 29,946, p. 4 (La.App. 2nd Cir. 10/29/97); 702 So.2d 53, 56. Therefore, in the absence of evidence showing the existence of a genuine issue of material fact, summary judgment in favor of defendant was proper.
Where employees are found to be "borrowed servants," they are also considered to be persons "in the same employ" as the employees of the borrowing employer, pursuant to LHWCA § 933(i); Perron, 970 F.2d at 1412 (5th Cir.1992). Because Lege and Givens were the borrowed servants of Mobil, and Foreman was also an employee of Mobil, we likewise conclude that for purposes of LHWCA § 933(i), Foreman, Givens and Lege were all persons "in the same employ."
The federal Fifth Circuit has recognized that § 933(i) of the LHWCA protects negligent co-employees from suits based on negligence brought by co-employees. Perron, 970 F.2d at 1412. Therefore, because we have determined that Foreman, Givens and Lege were all co-employees of Mobil, none of these three co-employees have a cause of action in tort against the other for negligent injury during the course of their employment. Because Foreman had no right to assert an action against Lege or Givens under the protection afforded them by the LHWCA, any respondeat superior action against their nominal employer likewise has no basis, since the respondeat superior action is derivative.[7]Little v. State Farm Mutual Automobile Insurance Company, 177 So.2d 784, 786 (La. App. 1st Cir.1965).

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs are assessed against appellants, Halic James Foreman and Brian David Foreman.
AFFIRMED.
NOTES
[1] The Mills court concisely reviewed the origin of the OCSLA's incorporation of the LHWCA:

Congress enacted OCSLA in 1953 to establish the law governing conduct on the Outer Continental Shelf, an area of intense activity that lacked an established legal system because it lies beyond state boundaries. Congress enacted OCLSA `to define a body of law applicable to the seabed, the subsoil, and the fixed structures ... on the Outer Continental Shelf'....
One obvious void in the law governing the OCS was the lack of a workers' compensation scheme for thousands of workers employed in the dangerous oilfield extraction industry. Congress filled that void in § 1333(b) when it adopted the LHWCA's benefits provision to cover non-seamen employed in the oil patch on the OCS. Id. at 358. (citations omitted)
[2] Section 933(i) provides:

The right to compensation or benefits under [the LHWCA] shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer.
[3] There is some confusion surrounding the application of the "borrowed servant doctrine" to tort immunity in the LHWCA context. See Melancon, 834 F.2d at 1245, n. 12. Although the courts in Melancon, 834 F.2d at 1244-45, and Ledet, 615 So.2d at 993, emphasized the importance of the first factor of control, the court in Gaudet, 562 F.2d at 357, stressed the importance of the fourth, fifth, sixth and seventh factors. See Brown, 984 F.2d at 676, n. 2. In the context of this suit, it appears that the control factor should be a central inquiry.
[4] Plaintiffs, on appeal, contest this finding and distinguish this case from the Melancon case by reference to the absence of proof of a written contract in this case. As plaintiffs correctly note, the written contract in Melancon presented a hurdle to finding a borrowed servant relationship existed inasmuch as that contract specified that "no Beraud [i.e., the nominal employer] employee is to be considered the agent, servant or representative of Amoco [the borrowing employer]." Melancon, 834 F.2d at 1245. Nevertheless, as the Melancon court recognized, the reality of the situation can modify, alter, or waive express contractual obligations. Id. at 1245.
[5] Plaintiffs challenge the finding that the place of performance was furnished by Mobil and refer to testimony Lege gave in his deposition, citing the page and line number of the allegedly contrary statements in the deposition. However, these portions of the deposition are not contained in the record and were not attached to their memorandum in opposition to the motion for summary judgment. Therefore, these statements are not before us on review.
[6] Plaintiffs challenge this finding, but offer no additional evidence to contest this finding. We conclude that as applied to the specific facts of this case, the case law cited supports the findings of the trial judge.
[7] For a thorough discussion of the LHWCA § 933(i) bar to a respondeat superior action, see Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409 (5th Cir.1992).