916 So.2d 1166 (2005)
Emmett DUNNINGTON, Rebecca Dunnington Smith and Darren B. Dunnington, Individually and on Behalf of the Estate of Marilyn P. Dunnington, the Estate of Connie Prather, and the Estate of James M. Prather
v.
Frank A. SILVA, M.D., and Our Lady of the Lake Regional Medical Center.
No. 2004 CA 1788.
Court of Appeal of Louisiana, First Circuit.
September 28, 2005.
Rehearing Denied December 22, 2005.
*1167 Lawrence D. Wiedemann, New Orleans, Counsel for Plaintiffs/Appellants Emmett Dunnington, Rebecca Dunnington Smith and Darren B. Dunnington.
Douglas K. Williams, Baton Rouge, Counsel for Defendants/Appellees Frank A. Silva, M.D. and Our Lady of the Lake Regional Medical Center.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this appeal, plaintiffs challenge the trial court judgment granting summary judgment in favor of defendants and dismissing their claim for damages. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 22, 1995, James M. Prather killed his wife, Connie Prather, and his daughter, Marilyn P. Dunnington, in front of Mrs. Prather's beauty shop in Greenwell Springs, Louisiana. After killing Mrs. Prather and Mrs. Dunnington, Mr. Prather killed himself.
Thereafter, Emmett Dunnington, Rebecca Dunnington Smith and Darren B. Dunnington, individually and on behalf of the estate of Marilyn P. Dunnington, the estate of Connie Prather, and the estate of James M. Prather filed a wrongful death and survival action against Frank M. Silva, M.D., and Our Lady of the Lake Regional Medical Center (OLOL). Pursuant to a Stipulated Judgment, on April 22, 2002, all claims relating to the death of Mr. Prather and Mrs. Prather, as well as the claims of the estates of Mrs. Dunnington, Mrs. Prather and Mr. Prather, were dismissed. On April 23, 2004, Dr. Silva and OLOL filed a motion for summary judgment asserting that the remaining plaintiffs, Mrs. Dunnington's husband and her two children, could not establish a breach of duty by defendants or establish any causal connection between any action or inaction of defendants and the death of Mrs. Dunnington. On June 7, 2004, in oral reasons, the trial court granted the motion in favor of both defendants. Judgment was signed on June 15, 2004. Plaintiff then appealed asserting that the trial court erred in granting the summary judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a fullscale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La. App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966 A(2); Thomas v. Fina Oil and Chemical Co., 02-0338, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-02.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the *1168 burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. LSA-C.C.P. art. 966 C(2); Robles v. ExxonMobile, 02-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 02-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 03-3439 (La.2/20/04), 866 So.2d 830. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.

DISCUSSION
The Louisiana legislature recognized a psychiatrist's "duty to warn" by enacting LSA-R.S. 9:2800.2. Hutchinson v. Patel, 93-2156, p. 2 (La.5/23/94), 637 So.2d 415, 418. At all pertinent times hereto, the statute provided as follows:
A. When a patient has communicated a threat of physical violence, which is deemed to be significant in the clinical judgment of the treating psychologist or psychiatrist, or board-certified social worker, against a clearly identified victim or victims, coupled with the apparent intent and ability to carry out such threat, the psychologist, licensed under R.S. 37:2351 through 2369, or the psychiatrist, licensed under R.S. 37:1261 through 1291, or the board-certified social worker, licensed under R.S. 37:2701 through 2719, treating such patient and exercising reasonable professional judgment, shall not be liable for a breach of confidentiality for warning of such threat or taking precautions to provide protection from the patient's violent behavior.
B. A psychologist's or psychiatrist's or board-certified social worker's duty to warn or to take reasonable precautions to provide protection from violent behavior arises only under the circumstance specified in Subsection A of this Section. This duty shall be discharged by the psychologist or psychiatrist if he makes a reasonable effort to communicate the threat to the potential victim or victims and to notify law enforcement authorities in the vicinity of the patient's or potential victim's residence.
C. No liability or cause of action shall arise against any psychologist or psychiatrist based on an invasion of privacy or breach of confidentiality for any confidence disclosed to a third party in an effort to discharge the duty arising under Subsection A of this Section.[1]
Thus, a psychiatrist has a duty to protect third persons only in a limited *1169 scenario. Grady v. Riley, 01-1187, p. 7 (La.App. 5 Cir. 2/26/02), 809 So.2d 567, 571, writ denied, 02-1033 (La.6/7/02), 818 So.2d 765. Before the duty of a psychiatrist to warn third parties about possible violent behavior of a patient even arises, the patient must have made a threat to a clearly identifiable victim. Grady, 01-1187 at p. 6, 809 So.2d at 571 (citing Durapau v. Jenkins, 95-120, p. 7 (La.App. 5 Cir. 5/30/95), 656 So.2d 1067, 1069, writ denied, 95-1478 (La.9/22/95), 660 So.2d 477).
In this matter, plaintiffs contend that defendants were in violation of LSA-R.S. 9:2800.2 by failing to notify Mrs. Dunnington and local law enforcement authorities of Mr. Prather's release from commitment. Plaintiffs also assert that Dr. Silva was negligent in failing to keep Mr. Prather hospitalized after May 8, 1995. Defendants contend, however, that LSA-R.S. 9:2800.2 is an exclusive remedy as to these plaintiffs, and because plaintiffs submitted no evidence suggesting that Mr. Prather communicated any threat to Dr. Silva, there was no violation of LSA-R.S. 9:2800.2 and summary judgment was therefore appropriate.
In support of their motion for summary judgment, defendants submitted copies of the hospital records from OLOL, the affidavit of Dr. Silva, the temporary restraining order obtained by Mrs. Prather against her husband, excerpts from the depositions of Emmett Dunnington and of Dr. Harry Doyle, the affidavit of Dr. Robert Blanche, and the opinion of the medical review panel.[2] Plaintiffs opposed the summary judgment motion submitting copies of the sheriff's report, Mr. Prather's hospital records, and excerpts from the depositions of Dr. Silva and Dr. Doyle, to show that there were genuine issues of material fact.
The evidence establishes that on April 23, 1995, Mr. Prather was admitted to OLOL pursuant to an order of protective custody issued by the Office of the Coroner for East Baton Rouge Parish. At the time of his admission, Mr. Prather was 71 years old and had separated three weeks earlier from his wife of 52 years. The involuntary commitment was a result of Mr. Prather's previous behavior, including threatening his son with a gun and blocking the driveway of his wife's business with two of his tractors.[3] Mr. Prather's history of mental illness was also cited as a reason for the commitment. Following admission to OLOL, Mr. Prather was examined by Dr. Allan R. Perego, who was of the opinion that Mr. Prather suffered from manic psychosis. He therefore issued a fifteen-day physician's emergency certificate (PEC) for further psychiatric evaluation. Subsequently, Dr. Frank Silva took over the care of Mr. Prather at OLOL.
In his affidavit, Dr. Silva noted that Mr. Prather had been hospitalized in 1985 after making suicidal threats, as well as homicidal threats to a person with whom he was involved in a lawsuit. After the 1985 hospitalization, Mr. Prather had remained in Dr. Silva's care. Dr. Silva testified, however, that during the recent 1995 hospitalization, Mr. Prather made no suicidal or homicidal threats. Dr. Silva saw Mr. *1170 Prather on a daily basis during the 1995 hospitalization during which time Mr. Prather's condition stabilized. Dr. Silva also stated that when Mr. Prather was advised that Mrs. Prather was going to file for divorce, although Mr. Prather seemed surprised, he stated he could accept her decision.
The PEC under which Mr. Prather was held expired on May 8, 1995. Prior to discharge, a social worker met with Mr. Prather's family and discussed the possibility of judicial commitment. The family chose not to seek further commitment and Mr. Prather was released to the care of his brother and grandsons.
Dr. Silva further testified that at the time of discharge Mr. Prather had stabilized, was in good spirits, agreed to continue treatment on an outpatient basis, agreed to continue his medications, never expressed any plan to harm his wife or daughter, and during his hospitalization expressed no suicidal ideations or homicidal threats. Dr. Silva concluded by stating that following Mr. Prather's discharge he did not receive any information from Mr. Prather or anyone else suggesting that Mr. Prather intended to harm himself, his wife, or his daughter.
The day after Mr. Prather was released from OLOL, Mrs. Prather filed papers for divorce and obtained a temporary restraining order against Mr. Prather. On May 20, 1995, twelve days after his release from commitment, Mr. Prather had dinner with Mrs. Dunnington, at which time she told her father that he would be served with the divorce papers. There is no evidence that Mr. Prather made any threats to his daughter or anyone else at that time. Two days later, Mr. Prather killed his wife and daughter.
Pursuant to LSA-R.S. 9:2800.2 A, the duty to warn third persons arose only if Mr. Prather had communicated a threat to Dr. Silva of physical violence deemed to be significant in the clinical judgment of Dr. Silva, against a clearly identified victim or victims, coupled with the apparent intent and ability to carry out such threat. Defendants submitted evidence that Mr. Prather never communicated any threats of violence to Dr. Silva against Mrs. Dunnington or any other person.
Thus, defendants pointed out an absence of factual support for an element of plaintiffs' claim. The burden then shifted to plaintiffs, who were required in order to defeat defendants' motion for summary judgment, to set forth specific facts that a significant threat was communicated to Dr. Silva by Mr. Prather in order to show that there was a genuine issue of material fact for trial. There is no evidence whatsoever in the record that Mr. Prather communicated a threat of physical violence against anyone to Dr. Silva or any employee of OLOL, subsequent to his commitment. Plaintiffs' own expert, Dr. Harry Doyle, admitted that there was no documentation in the hospital records of any threat by Mr. Prather to harm or kill his wife. Additionally, Mr. Dunnington himself testified that he knew of no threats against his wife. Because no evidence of any threat was presented, as required by LSA-R.S. 9:2800.2, the duty to warn did not arise.
Plaintiffs argue, however, that LSA-R.S. 9:2800.2 is not an exclusive remedy and that Dr. Silva and OLOL were negligent in releasing Mr. Prather after his involuntary commitment expired and in failing to warn others of his release. In support of this contention, plaintiff's expert, Dr. Doyle, testified that he was of the opinion that Dr. Silva breached his standard of care in releasing Mr. Prather on May 8, 1995.
We disagree with the plaintiffs. Under subsection B of the statute, a psychiatrist's duty to warn or to take reasonable precautions to provide protection from violent *1171 behavior arises only under the circumstance specified in subsection A. The statute is exclusive as to claims by third parties. Further, OLOL was acting only under the direction of its doctors, and plaintiffs submitted no evidence suggesting that OLOL breached any independent duty it owed to Mrs. Dunnington. Although the facts of this case are tragic, we agree with the trial court that no genuine issue of material fact remains. Accordingly, summary judgment was appropriate.

CONCLUSION
For the above reasons, the summary judgment in favor of the defendants, Dr. Frank A. Silva, M.D. and Our Lady of the Lake Medical Center, is affirmed. Costs of this appeal shall be borne by the plaintiffs, Emmett Dunnington, Rebecca Dunnington Smith and Darren B. Dunnington.
AFFIRMED.
NOTES
[1] Louisiana Revised Statute 9:2800.2 was amended by Acts 2003, No. 870, § 1.
[2] Although the plaintiffs' remaining claims are not made under the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq., the original complaint was submitted to a medical review panel, of which Dr. Blanche, a board-certified psychiatrist, was a member. The medical review panel unanimously determined that the treatment provided by defendants to Mr. Prather was within their standard of care and that the conduct complained of was not a factor in the resultant damages.
[3] During his hospitalization, Mr. Prather denied any intent to harm his son, stated the gun was unloaded and said he was simply showing it to his son.