McDonald, j.
12This is an appeal from a declaratory judgment arising out of a medical malpractice complaint made by Dorothy and Michael Bush in connection with the death of their child, Dercel Bush, on or about May 25, 2002. Dr. John J. LaMartina, Jr. saw Dercel Bush at the West Jefferson Medical Center emergency room on October 21, 2001. Dercel Bush died on May 25, 2002, from complications of rheumatic fever.
In August of 2002, Dr. LaMartina retired from the practice of medicine. His professional liability insurance was written on a claims-made basis[1], and he secured an endorsement from his insurer providing coverage for claims arising out of his practice prior to that time, but reported later, known as extended reporting endorsement or tail coverage. Because Dr. LaMartina had been insured with St. Paul Companies for many years, St. Paul Companies waived any additional premium for the extended reporting endorsement. The extended reporting endorsement also noted that the PCF surcharge for tail coverage was waived.
On September 27, 2002, Dorothy and Michael Bush filed a Medical Review Panel complaint, which did not name Dr. LaMar-tina as a defendant. Around April 1, 2003, Dr. LaMartina returned to practicing medicine. On July 12, 2004, the Bushes amended their complaint, naming Dr. La-Martina as a defendant. On November 8, 2004, Dr. LaMartina received a letter from the PCF advising him that the malpractice complaint had been filed and further advising that it was the position of the PCF that he was not a member of the fund for the claim; thus, he was not qualified for the panel review. The PCF denied quali- *251 fled healthcare provider status to Dr. La-Martina on the basis that no surcharge was paid for his tail coverage with the PCF.
|sOn May 9, 2006, Dr. LaMartina filed a petition for declaratory judgment to determine his status as a qualified health care provider under the Louisiana Medical Malpractice Act. Dr. LaMartina named as defendants the Louisiana Patient’s Compensation Fund (PCF) and Dorothy and Michael Bush. After a hearing, the trial court granted Dr. LaMartina’s motion for summary judgment, declaring that Dr. La-Martina was a qualified health care provider under the PCF in connection with the claims of Dorothy and Michael Bush. The Patient’s Compensation Oversight Fund Board and the PCF (collectively “the appellants”) appealed that judgment, asserting that the trial court erred in finding Dr. LaMartina was a qualified health care provider because he did not pay the applicable tail surcharge.
Louisiana Revised Statutes 40:1299.42(A) provides in part:
To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
The health care provider must do both. It is not enough to provide proof of financial responsibility through either a policy of insurance or self-insurance; the surcharge assessed by the PCF must also be paid. The appellant cites LAC 37:111 § 517[2] subsections A and B and LAC 37:111 § L715C.1[3] for the proposition that Dr. LaMartina’s PCF claims-made coverage expired on July 28, 2002, when the policy terminated and did not continue beyond this date because he failed to pay the applicable PCF surcharge. They contend he allowed his enrollment in the PCF to end by not paying the tail surcharge. Normally this would be the case as these provisions do require the payment of the surcharge. However, the appellant’s argument completely ignores § 715D[4] which *252 provides for a “waiver” of the payment. A waiver has the same effect as a payment. Thus, at the time of his ^retirement, he had paid the tail surcharge because St. Paul had issued a waiver for their premium and for the tail surcharge.
The appellants rely upon O’Bryan v. Louisiana Patient’s Compensation Fund Oversight Board, 01-0728 (La.App. 1 Cir. 11/08/02), 832 So.2d 438, writs denied, 03-0350, 03-0352 (La.04/21/03), 841 So.2d 799, for their assertion that Dr. LaMartina was required to pay a PCF tail surcharge if he desired to be considered a PCF qualified healthcare provider. The appellants argue that because Dr. LaMartina retired and then went back to work, he was not “permanently retired” in August of 2002 and he thereafter did not pay the PCF tail surcharge; thus, he was not PCF qualified for coverage when the malpractice claim at issue was made. This is a totally different issue than that in the O’Bryan case and it is distinguishable from the present case. Dr. O’Bryan had a policy of medical malpractice liability, and thereafter became self-insured and failed to purchase extended reporting or tail coverage. A claim was made for an alleged act of malpractice that had occurred during the time Dr. O’Bryan had medical malpractice liability insurance, but the claim was filed during the later time period when Dr. O’Bryan was self-insured and did not have tail coverage because he failed to purchase it.
In the present case, Dr. LaMartina retired and St. Paul Companies waived his payment for tail coverage and the accompanying surcharge. During the time period after Dr. LaMartina began practicing medicine again, a claim.was filed for an alleged act of malpractice that had occurred before he retired.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine [ tissue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 01-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is *253 no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., 02-0338, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); See Robles v. ExxonMobile, 02-0854, p. 4 (La.App. 1 Cir.3/28/03), 844 So.2d 339, 341; See Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880.
Appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 02-1072, p. 5 (La.4/9/03), 842 So.2d 373, 377. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637; Samaha v. Rau, supra.
Although the appellants assert that an issue of fact exists as to whether Dr. LaMartina “permanently retired” in August of 2002, there is no dispute that St. Paul Companies accepted his representation that he was retiring at that time and issued an extended reporting endorsement without charge on that basis, noting the waiver of the PCF surcharge. The PCF argues that Dr. LaMartina was not “permanently” retired because he returned to medical practice within nine months. Thus, how to interpret the phrase “permanently retired” is the real issue in this case, which appears to be res nova.
The starting point for the interpretation of any statute is the language of the statute itself. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045; Cat’s Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as | swritten and no further interpretation may be made in search of the intent of the legislature.[5] La. C.C. art. 9. When the wording of a section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. Duncan v. *254 U.S.A.A. Ins. Co., 06-363, p. 9 (La.11/29/06), 950 So.2d 544, 550.
The term “permanent” is not ambiguous and has a clear meaning. However, to apply it in the manner suggested by the PCF creates an absurd result. When Dr. LaMartina retired, the surcharge was not collected or paid because it was waived. At that point, everyone, including Dr. La-Martina and the PCF, considered him to be a qualified health care provider. He had done what he was requested to do. He was informed that he did not owe the surcharge because a waiver had been granted. To come back later and decide that he is no longer a qualified health care provider creates an illogical consequence. Normally, tail coverage would not provide coverage for longer than three years (the peremptive time for claims to be made in a medical malpractice action). If the surcharge had been waived during this time period then any claims would be covered. However, if the physician decided to return to practice just short of the three-year period then the PCF could declare him not qualified for those claims that had been filed and perhaps even adjudicated. This application is impractical. “Permanent” has to be determined at the time the physician retires, and the decision to waive the surcharge must be made then (as in Dr. LaMartina’s case) and not later and given retroactive application.
laOn de novo review we find no genuine issue of material fact that Dr. LaMartina was a qualified healthcare provider under the PCF in connection with the claims of Dorothy and Michael Bush. The trial court judgment is affirmed. Costs are assessed against the appellants.
AFFIRMED.
McCLENDON, J., concur and assigns reasons.

. Prior to retiring, his last policy was issued by St. Paul Guardian Insurance Company for a claims-made period of July 28, 2001 through July 28, 2002.

.LAC 37:111 § 517 A and B provided at the time Dr. LaMartina retired:
A. Enrollment with the fund terminates:
1. as to a health care provider evidencing financial responsibility by certification of insurance pursuant to § 505 of these Rules, on and as of the effective date and time of termination of the policy period of the health care provider's professional liability insurance coverage;
B. Enrollment with the fund must be annually renewed by each enrolled health care provider on or before termination of the enrollment period by submitting to the executive director an application for renewal, upon forms supplied by the executive director, and payment of the applicable surcharge in accordance with the rules hereof providing for the fund’s billing and collection of surcharges from insured and self-insured health care providers. [This regulation is found in the Louisiana Register at Vol. 18, No. 2, (February 20, 1992).]

. LAC 37:111 § 715 C.l. provided at the time Dr. LaMartina retired:
C.l. When a health care provider who had previously purchased claims-made coverage from the Fund elects to purchase occurrence coverage from or discontinue enrollment in the Fund, he shall not have coverage afforded by the Fund for any claims arising from acts or omissions occurring during the Fund's claims-made coverage but asserted after the termination of the claims-made coverage unless he evidences financial responsibility for those claims and pays the surcharge applicable to fund tail coverage for the corresponding claims-made period(s). [This regulation is found in the Louisiana Register at Vol. 23, No. 1 (January 20, 1997).]

. LAC 37:111 § 715 D provides:
*252 D. When a health care provider who had previously purchased claims-made coverage from the Fund permanently retires after 10 consecutive years of enrollment, or when an institutional provider and any successors who had previously purchased claims-made coverage from the Fund permanently ceases to do business and/or practice medicine after 10 consecutive years of coverage, or when a health care provider who had previously purchased claims-made from the Fund dies or becomes permanently disabled, then the surcharge to the Fund for tail coverage for claims occurring during the existence of the Fund claims-made coverage shall be considered to have been paid. However, continuous coverage through the Fund under this Rule shall only apply if the affected provider or institution maintains continuous financial responsibility either through insurance coverage or submission of the security required for self-insurance under § 507, including tail coverage, for the primary $100,000 for each claim. Further, this Rule shall only apply to the successor of an institutional provider to the extent that the predecessor business entity was enrolled, and only to the single business entity which had been previously enrolled; this Rule shall not apply to other business entities of the successor provider. [This regulation is found in the Louisiana Register at Vol'. 23, No. 1 (January 20, 1997).]