MAX N. TOBIAS, JR., Judge.
|, This appeal arises from a sexual harassment suit brought by the plaintiff against her employer and co-worker, from which suit the trial court pursuant to a motion for summary judgment ■ dismissed the employer.
In October 1999, Baroid Drilling Fluids (“Baroid”), a subsidiary of the Halliburton Company, contacted Capital Staffing, an employment agency, seeking a temporary employee to fill in for Baroid’s receptionist, who was on vacation. Capital Staffing sent the plaintiff, Judy Street Bourgeois (“Bourgeois”), to work for a two-week period at Baroid. Initially, Bourgeois’ employment at Baroid was to last only for those two weeks.
Bourgeois worked in the front office for that two-week period. Her supervisor was Larry Osborne (“Osborne”), project manager for Baroid. At the end of the two-week period, Baroid apparently wanted to continue employing Bourgeois, and asked her to stay on. Beginning in late November 1999, Bourgeois began working some *1004 in the laboratory at Baroid, and increasingly she worked more and more in the laboratory and less in the front office. While she worked in the laboratory, her direct supervisor was Ron Barrois (“Bar-rois”).
lijOne of Bourgeois’ co-workers in the Baroid laboratory was the defendant, Daryl Curry (“Curry”), a foreman for Baroid. Bourgeois claims that as soon as she began working with Curry, she was the target of his inappropriate sexual comments and gestures. According to Bourgeois, Curry eventually began making unwelcome physical advances, which she .resisted. The harassment included verbal propositioning, touching her buttocks, physically intimidating her by pushing her against a sink in the laboratory, and poking her breasts.
Bourgeois did not report the harassment to Osborne or anyone at Baroid or Capital Staffing prior to her leaving Baroid. She testified that she needed the income provided by the job and seemed to think that reporting the harassment would somehow affect her employment there. She believed that Curry was close to Osborne and thought that Curry somehow influenced Osborne on decisions relating to her employment. Specifically, she alleged that her work hours seemed to decrease after she rebuffed Curry’s advances. She did not document or substantiate this claim in the record, and there is no evidence that anyone at Baroid (other than Curry) knew of the harassment. Bourgeois testified that her employment was always temporary; according to Osborne, she was asked to continue on at Baroid to fill in for employees who were taking vacations as well as to fill in some for Barrois, who was diagnosed with cancer and who needed to decrease his work hours.
Finally, in February 2000, after being physically assaulted by Curry, Bourgeois suffered an emotional breakdown and was admitted to the hospital for a few days.[1] While she was in the hospital, she decided to quit working at Baroid. 1¡¡Following her hospitalization, she called Barrois and reported the harassment inflicted by Curry over the past few months. Prior to calling Barrois, Bourgeois admits that she did not report the harassment to anyone at Bar-oid, Halliburton, or Capital Staffing.
Both Capital Staffing and Baroid had established sexual harassment policies. When Bourgeois began working with Capital Staffing, she received and signed a two-page document titled “Sexual Harassment Policy.” The document stated that complaints of sexual harassment should be brought to the attention of Adam Landry or Betty Landry (of Capital Staffing) and that any complaints would be investigated promptly and would remain confidential. Baroid operated under the sexual harassment policy of Halliburton, which was explained to the employees (including Bourgeois) by an individual who came to the Baroid site. The Baroid employees were directed to a posted document that listed the phone number for the “Halliburton Ethics Helpline” by which an anonymous complaint could be made. Bourgeois testified in her deposition that she recalled being told to call the phone numbers on the posted document if she experienced any problems at Baroid.
On 24 October 2001, Bourgeois filed suit against Curry and Baroid. She made specific allegations of the verbal and physical harassment by Curry and further alleged that Baroid knew or should have known about the harassment, failed to do anything about it, and did not “have a policy and procedure available to correct the ac *1005 tions” of Curry. She outlined causes of action against Baroid grounded in negligence and intentional tort, as well as re-spondeat superior. Baroid answered the petition for damages on 17 May 2002.
On 5 June 2003, Baroid filed a motion for summary judgment on the grounds that Bourgeois would not be able to substantiate her claims against it ^because, according to her own deposition testimony, she never reported the harassment to Bar-oid; Curry was not her supervisor; she was never promised employment beyond her temporary assignment; and Baroid had a sexual harassment policy in place of which Bourgeois was aware but of which she chose not to avail herself. In support of the motion for summary judgment, Bar-oid included excerpts of Bourgeois’ deposition testimony, a statement of uncontested facts, a copy of the document posted at Baroid that provided numbers by which employees could report sexual harassment, as well as the sexual harassment policy of Capital Staffing that was received by Bourgeois and acknowledged by her signature.
In support of its contention that Baroid did not know of the harassment, the following excerpts of Bourgeois’ testimony were cited:
Q: Did he push you up against the sink from the beginning of your employment to the end of your employment or there was certain time—
A: No, because I wasn’t working — I wasn’t working in the back from the beginning of my employment, and I wasn’t alone in the back. He would only do it when Ron [Barrois] was off. If Ron was there, he’d stay his distance totally away from everything and everyone. As a matter of fact, one time I was in there. He ■ didn’t even know Ron was even there, and he came in there and started saying something to me, and Ron ran him out. Ron says, “Get back outside” or something like that to the effect. He says, “That guy is too touchy feely for me,” and I just laughed, and I went in — I just went back to doing what I was doing.
* * *
Q: How many times did he touch you on your buttocks?
A: Maybe four or five. Earl seen him do it once, and that was the last time he did it. Earl said something to him, “You better watch it. You don’t | ¡¡want sexual harassment.” So, you know, Earl makes a comment to him about sexual harassment.
Q: Did Earl actually witness one of the touches?
A: I didn’t see Earl see it, but after it happened, Earl made a comment to him about it, and Daryl made the comment — Daryl made a comment back to him and laughed it off, shrugged it off.
Q: Did anyone witness any of these five touches?
A: I don’t know if Earl did or not. That’s all I can say.
Q: Okay, but other than Earl, you don’t know of anyone else who witnessed it?
A: No.
Q: Let’s answer my question first, and then we’ll get to that. The pushing up against the sink on approximately ten occasions, the touching your buttocks on four or five occasions, and then the poking your breasts on one occasion, is that the only physical touching that Mr. Curry did to you?
A: Yes.
*1006 Q: And then you stated that no one ever witnessed any of that physical touching, correct?
Mr. Couture: That is not what she testified to.
Mr. Zurik: Well, she can answer the question. You can object.
Q: My question to you is did—
A: I’m not sure.
Q: So you don’t know one way or the other if anybody witnessed that?
A: Correct.
[Emphasis added.]
Baroid also supplies a portion of Bourgeois’ deposition testimony regarding Curry’s role at Baroid vis-a-vis Bourgeois:
Q. Daryl wasn’t your supervisor, right?
A. I guess not.
Q. Daryl never disciplined you, right?
A. Unh-unh.
Q. Is that correct?
A. Correct.
Q. And he didn’t hire you?
A. No.
Q. Is that correct?
A. No. Yes, that’s correct.
|fiQ. And he didn’t do any performance reviews on you, correct?
A. No.
Q. Is that correct?
A. Yes, that’s correct?
The motion for summary judgment was initially set for hearing on 11 July 2003. For unspecified reasons, the hearing was continued to 5 September 2003 without written motion. On 4 September 2003, Bourgeois filed a motion to continue the hearing for a second time, and the hearing on the motion for summary judgment was reset for 3 October 2003. No further motion to continue was filed by either party.
In response to Baroid’s motion for summary judgment, Bourgeois executed an affidavit on 2 October 2003.[2] She averred that she reported to several employees at Baroid, including Curry, and that she “considered him one of [her] supervisors.” She also averred that Curry told her that she eventually was going to be placed in a full-time position. She further stated that the sexual harassment policy at Baroid was not explained to her when she began working there. The affidavit goes on to state that Earl Weiscopf (“Weiscopf’), Curry’s supervisor, witnessed Curry sexually harassing and physically touching Bourgeois. She also avers that Cody LNU[3] witnessed the harassment and that she also reported to Cody at Baroid. According to Bourgeois’ affidavit, Curry was in control of the facility and “had the ear of Larry [Osborne].”
On 13 October 2003, the trial court granted Baroid’s motion for summary judgment on the grounds that plaintiff could not prove the requisite elements of her 17claims. No further reasons were given in the judgment. However, during oral argument on the motion, the court expressed concern that the affidavit executed by Bourgeois in opposition to the motion seemed to contradict her deposition testimony:
THE COURT: But, what can be more persuasive than the plaintiff who brings their own cases? You live and die by your words. This is the plaintiffs words. Now she’s trying, in a subsequent affidavit — -wait, let me finish. She says something different *1007 than what was in her deposition. Now you’ve pointed to the Court that there is a different place now where she now comes back and later says that the person was, in fact, in the room and was not.
Although it is never specifically articulated, the trial court found that Bourgeois did not put forth reliable evidence to rebut Baroid’s assertion that it did not know of the harassment. The court dismissed all of the causes of action against Baroid following the hearing.
Bourgeois assigns six errors committed by the trial court, some of which overlap. First, Bourgeois asserts that the trial court erred in granting the motion for summary judgment before discovery was completed. Second, she takes issue with the specific factual findings of the trial court that Baroid did not know of the harassment and that Curry was not Bourgeois’ supervisor.[4] Next, in separately numbered assignments of error, she asserts that the trial court erred in granting summary judgment on the causes of action of sexual assault/battery, negligent | Rinfliction of emotional distress, and intentional infliction of emotional distress. She finally argues that Baroid did not overcome the initial threshold for summary judgment insofar as its list of uncontested material facts are not in fact uncontested.
As a court of appeal, we review motions for summary judgment de novo. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). As a consequence, we are bound to weigh the evidence in the record on appeal as a trial court would in deciding the motion and in accordance with the Louisiana Code of Civil Procedure.
Louisiana Code of Civil Procedure Article 966 C provides:
(1)After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2)The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, hut rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966 C [Emphasis added.] Thus, in order to prevail on its motion for summary judgment, Baroid must establish that Bourgeois will not be able to produce evidence to support any one element of the cause of action on which judgment is sought. And, in order to rebut such a presumption successfully | flestablished by Baroid, Bourgeois must then come forth with sufficient evidence to overcome that presumption. Id.
*1008 Before we examine the viability of the causes of action dismissed by the trial court, we address Bourgeois’ first assignment of error that the trial court improperly granted summary judgment as discovery was incomplete and, more specifically, because her deposition was never completed, although several hours of testimony were taken on 28 February 2008. In support of her argument, Bourgeois contends that she propounded interrogatories and a request for production of documents that had not been answered as of the hearing. Further, Bourgeois claims that she intended to schedule more depositions of witnesses in this matter, but that she had not done so as of the summary judgment. She maintains that the discovery yet to be completed is imperative to substantiate her claims against Curry and Baroid, but does not specify in what way. Further, she does not document any attempts to engage in discovery and had not filed any motions to compel answers to discovery against Baroid or any other defendant.
Baroid counters that, insofar as this case had been pending before the court for almost two years prior to its motion for summary judgment, ample time had elapsed for Bourgeois to conduct adequate discovery to substantiate her causes of action. Further, Baroid contends that Bourgeois waived her right to challenge the trial court on this issue because she never filed a motion to continue the October 2003 hearing on the motion for summary judgment.[5] Further, she has put forth no evidence to show that she has exercised due diligence in conducting discovery in this matter or what circumstances might have prevented her from doing so.
|10We find no merit in Bourgeois’ first assignment of error that the case was not ripe for a motion for summary judgment. As noted in article 966, a defendant may file a motion for summary judgment “at any time” and the motion is properly granted (if the mover is so entitled) after “adequate discovery or after a case is set for trial.” La. C.C.P. art. 966 A(1) and C(1). There is no requirement that discovery be completed before a motion for summary judgment is filed or heard. Newton Associates, Inc. v. Sheridan, 99-2048, p. 6 (La.App. 4 Cir. 12/13/00), 775 So.2d 1144, 1147; Eason v. Finch, 32,157, p. 7 (La. App. 2 Cir. 8/18/99), 738 So.2d 1205, 1210. While we might be receptive to an argument that discovery has been hindered by some circumstance beyond the plaintiffs control, in the present matter, no showing is made that that is the case. Any need for additional time to conduct discovery should have been expressed in a motion to continue, motion to compel, or other pleading.
Bourgeois next takes issue with the dismissal of the sexual harassment claim against Baroid. In order to successfully maintain her action for sexual harassment based on a hostile work environment, Bourgeois must prove that:
(1) she belonged to a protected group;
(2) she was subjected to unwelcome sexual harassment;
(3) the harassment complained of was based on sex;
(4) the harassment complained of affected a “term, condition or privilege” of her employment; and
(5) her employer (Baroid) knew or should have known of the harassment in question and failed to take prompt remedial action.
Lawson v. Straus, 98-2096, p. 8 (La.App. 4 Cir. 12/8/99), 750 So.2d 234, 240, citing *1009 Alphonse v. Omni Hotels Management Corp., 94-0157, p. 2 (La.App. 4 Cir. 9/29/94), 643 So.2d 836, 838-839.
There is no dispute that Bourgeois is a member of a protected class (female) or that the harassment described in her pleadings was sexual in nature or unwelcome. The main element from the above-numbered list that is in contention in this appeal is the last one: whether any Baroid supervisor knew or should have known about Curry’s harassment of Bourgeois and failed to take prompt remedial action.[6] This element is one rooted in the theory of respondeat sioperior. Lebeaux v. Newman Ford, Inc., 28,609, p. 7 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291, 1295.
Baroid argues that even if Bourgeois’s allegations of harassment are taken as true, it cannot be held liable because it did not know about the harassment until Bourgeois finally reported the harassment to her supervisor, Barrois, after she had quit. Although Bourgeois asserts that Baroid knew or should have known about the harassment, Baroid points to Bourgeois’ own deposition testimony as clearly establishing that she never told anyone at Bar-oid about the harassment and that she herself does not know whether any supervisor actually knew about Curry’s treatment of her.
Bourgeois claims that her deposition testimony establishes that it is likely that Weiscopf and Barrois knew about the harassment and did nothing about it. At the very least, she asserts that her affidavit creates a genuine issue of material fact. |12Puring oral argument before the trial court, counsel for Bourgeois accused Bar-oid of picking and choosing portions of her deposition testimony out of context to bolster its motion. While we would prefer to have more of Bourgeois’ testimony to evaluate her claims, it is incumbent upon her as the respondent-in -rule to the summary judgment to present those portions of testimony that might derail or undermine Baroid’s assertions or establish that genuine issue of material of fact on the issue exists. She failed to do so, and as the record on appeal necessarily binds our inquiry, we cannot speculate as to what the rest of her deposition testimony might reveal. Those portions of the deposition contained in the record substantiate Bar-oid’s claim that Bourgeois had no knowledge that anyone (especially in a supervisory position) at Baroid besides Curry knew of the harassment she suffered.
With regard to Bourgeois’ affidavit creating a genuine issue of material fact, we find that it is insufficient to carry her burden in defeating the motion for summary judgment. Several key assertions contained in the affidavit seemingly contradict Bourgeois’ deposition testimony, in particular her testimony regarding whether any supervisors witnessed the sexual harassment and whether Curry was her supervisor. Baroid cites our opinion in George v. Dover Elevator Company, 02-0821 (La.App. 4 Cir. 9/25/02), 828 So.2d 1194, for the proposition that such a late-filed affidavit is insufficient to overcome an otherwise successful motion for summary judgment. In George, we found that under Louisiana law:
An inconsistent affidavit offered only after the motion for summary judgment was filed is not sufficient to create a genuine issue of material fact where no justification for the inconsistency is of *1010 fered. Douglas v. Hillhaven Rest Home, Inc., 97-0596 (La.App. 1 Cir. 4/8/98), 709 So.2d 1079, 1083; McLaughlin v. French Riviera Health Spa, Inc., 99-546 (La.App. 5 Cir. 10/26/99), 747 So.2d 652 LeBlanc v. Dynamic Offshore Contractors, Inc., 626 So.2d 16 (La.App. 1 Cir.1993). This is to prevent the too easy thwarting of summary judgment procedure by the mere filing of affidavits contradicting the inconvenient statements found in previous deposition testimony when the mover has no opportunity to cross-examine the witness concerning the inconsistencies and the trial court is prevented from weighing evidence by the rules of summary judgment.
Id. at p. 4, 828 So.2d at 1197. Given the circumstances and timing surrounding the execution of Bourgeois’ affidavit, we find that the affidavit is insufficient to overcome the motion for summary judgment regarding these key issues.
As such, we find that the trial court properly granted summary judgment in favor of Baroid on the sexual harassment claim, because Bourgeois did not establish through any reliable evidentiary showing that anyone at Baroid besides Curry knew of the harassment or that Curry himself was a supervisor through whom employer knowledge could be inferred.
Next, we examine Bourgeois’ causes of action in negligent and intentional infliction of emotional distress. Although Bourgeois argues that Baroid’s liability should be assessed under a duty-risk analysis, we are cognizant that an employee’s claims for injuries arising in the workplace that sound in negligence are precluded by the Louisiana Workers’ Compensation Statute. La. R.S. 23:1032; Tumbs v. Wemco, Inc., 97-2437, pp. 4-5 (La.App. 4 Cir. 4/22/98), 714 So.2d 761, 763. Since there is no allegation that Curry harassed her outside of the worksite at Baroid or beyond work hours, any claims grounded in negligence are precluded. Thus, the only claims that Bourgeois could potentially bring against her employer are those stemming from intentional tort.
|14An action for intentional infliction of emotional distress consists of three elements:
(1) the conduct of the defendant was extreme and outrageous;
(2) the emotional distress suffered by the plaintiff was severe; and
(3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his (its) conduct.
Lawson v. Straus, 98-2096, p. 8 (La.App. 4 Cir. 12/8/99), 750 So.2d 234, 240. Unlike an action grounded in negligence, an action sounding in intentional tort causes us to focus on whether the employer desired or knew that the harm facing the plaintiff as a result of the complained-of conduct was substantially certain to result from the conduct. Because we find that the evidence preponderates to show that Baroid did not know of the harassment inflicted by Curry, we cannot impute the desire or knowledge to Baroid that a successful claim for intentional infliction of emotional distress requires.
Bourgeois argues that Baroid is liable under a theory of respondeat superi- or for the intentional torts of Curry, including assault, battery, and intentional infliction of emotional distress. Louisiana Civil Code article 2320 provides that:
Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed .... In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might *1011 have prevented the act which caused the damage, and have not done it....
Insofar as we have found that Baroid did not know of the harassment and that Bar-oid did have a sexual harassment policy that Bourgeois might have utilized, at hsfirst blush it does not appear that it will be liable under the constraints of article 2320. However, the Louisiana Supreme Court has lent guidance in its analysis of the issue of respondeat superior in sexual battery cases.
In Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, the Louisiana Supreme Court held (in a sexual harassment suit with a similar fact pattern[7]) that:
“An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours.” (quoting Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La.App. 2d Cir.1982) (citing Bradley v. Humble Oil Refining Co., 163 So.2d 180 (La.App. 4th Cir.1964))). “Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer’s objective.” Id.
Id. at pp. 3-4, 673 So.2d at 996.[8] The Court noted that the test as to whether an employee was acting within the course and scope of his employment when he committed the tortious act is comprised of four factors:
(1)whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee’s duties;
(3) whether the act occurred on the employer’s premises;
(4) whether the act occurred during the hours of employment.
Id. at p. 8, 673 So.2d at 999, citing, LeBrane v. Letois, 292 So.2d 216, 218 (La.1974).
Lain Baumeister, the Court found that the sexual battery of the plaintiff by her supervisor was neither incidental to the performance of her attacker’s duties nor primarily employment rooted:
The likelihood, on the other hand, that a nursing supervisor will find an employee alone in the nurses’ lounge and sexually assault her is simply not a risk fairly attributable to the performance of the supervisor’s duties. A nursing supervisor’s responsibilities do not include sexually oriented physical contact with a co-employee. And it is not at all foreseeable from the perspective of the hospital that such conduct will take place on hospital premises during working hours. We conclude that Plunkett’s actions were not reasonably incidental to the performance of his employment duties.
Id. at p. 9, 673 So.2d at 999. The court went on to note that the tortfeasor’s actions were not actuated in any regard by his employment: he did not threaten the plaintiff with the loss of her job or adverse employment action and he did not use his role as a supervisor to overcome the plain *1012 tiff. In short, the employer did not derive any gain or furtherance of business by the tortious actions of its employee.
Similarly, we find that Curry’s harassment of Bourgeois was not reasonably incidental to the performance of his employment duties as a foreman at Baroid. Bourgeois admits that Curry was not her supervisor and did • not discipline her or threaten her with any consequences to her employment for refusing to acquiesce. Also, it was not foreseeable within his duties at Baroid that he would have any reason to physically touch or intimidate Bourgeois.
Because we find that (a) Curry was not Bourgeois’ supervisor; (b) Baroid did not know of the harassment; (c) Baroid had a sexual harassment policy in place that was shown and explained to Bourgeois; and (d) there is no evidence that Baroid took any type of adverse employment action against Bourgeois, we find that she is unable to sustain a cause of action against Baroid either in intentional |17tort or respondeat superior. Further, because all alleged acts of harassment occurred during work hours and at the Baroid work site and in the course and scope of Bourgeois’ employment, we find that the Louisiana Workers’ Compensation Law preempts any causes of action against Baroid sounding in negligence.
For the foregoing reasons, we find that the trial court did not err in granting summary judgment in favor of Baroid and dismissing all claims against it.
AFFIRMED.

. None of the plaintiff's medical records are made a part of the record on appeal and it is unclear on the exact treatment received by plaintiff or of her diagnosis.

. We note that the affidavit was executed only one day prior to the hearing on Baroid’s motion for summary judgment. As Baroid notes, Bourgeois' opposition was untimely and, pursuant to Rule 9.9 of the Louisiana Rules of Court, the trial court was not bound to consider it in its determination.

. We assume that LNU denotes "last name unknown.”

. It is not clear that those are specific findings of the trial court, because they are not expressed in the judgment or reasons for judgment. However, given the context of the litigation and pleadings, as well as the transcript of the hearing, we interpret the judgment to be based on those, or substantially similar, findings.

. In fact, Baroid points out that its motion originally was set for 11 July 2003, and was continued at twice at the behest of Bourgeois.

. There is also some dispute as to whether the harassment affected a term or condition of her employment; Bourgeois contends that her work hours were cut after she rejected Curry’s advances. Baroid asserts that it did not know of any alleged harassment until after the fact and that she was always a temporary employee whose situation at Baroid did not change until she voluntarily quit.

. The main distinction being that in Baumeis-ter, the plaintiff immediately reported the sexual assault to her supervisor.

. This holding is derived from a long line of cases outlining the circumstances under which a court might impute liability to an employer for an employee’s tortious conduct. For the sake of brevity, we omit discussion of the evolution of this specific area of law, but note that the relevant case law cited by both parties includes Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224; Benoit v. Capitol Mfg. Co., 617 So.2d 477 (La.1993); LeBrane v. Lewis, supra.