DANIEL L. DYSART, Judge.
|,In this appeal, Jeffrey Garrett seeks review of the summary judgment granted on behalf of Adcock Construction Company (Adcock). For the following reasons, we affirm.
FACTUAL BACKGROUND:
Plaintiff filed a disputed claim for compensation with the Office of Workers’ Compensation alleging that he sustained an injury while working at the Astor Crowne Plaza Hotel (Hotel). He listed both the general contractor, Adcock, and the hotel owner, Prism Hotels & Resorts (Owner), as his employers.
Plaintiff, the owner of J & C Furniture Specialists, Inc. (J & C), entered into a contract on July 15, 2008, with Lisambiance Design, the interior decorating firm hired for the renovation job, to refinish armoires in the guest rooms. The contract between J & C and Lisambiance Design provided that the contract was for the first payment only, and that the contract would be assigned to Adcock after Adcock signed a contract with the owner of the Hotel.
On July 21, 2008, Adcock entered into an agreement with the Owner to renovate the Hotel. Michael Adcock, owner of Adcock, testified by affidavit that he has performed hotel renovations across the United States for twenty-five years. J^This was the first time that any furniture in a hotel was being restored rather than replaced outright. Adcock testified his company had never restored furniture before and that restoring furniture is not part of its busi *? ness or necessary to the company’s ability to generate work. Adcock did not exercise control or approval over plaintiff, except to provide a room for him to perform refinishing work. No tools or materials were provided by Adcock. Adcock noted that Lisa Condon of Lisambiance Design, recommended J & C for the refinishing job, and that J & C was hired as the refinisher of the armoires prior to Adcock signing its contract to renovate the Hotel. However, the contract between Adcock and the Owner provided that Adcock would “manage the modifications and refinishing of the existing armoires.”
The renovations were performed floor by floor. On each floor, a room was designated for plaintiff to refinish the armoires. Because plaintiff utilized chemicals to refinish the armoires, the rooms required ventilation. However, because the windows in the Hotel were not operational, a window in each room in which plaintiff worked was broken. During the course of the renovations to the Hotel, plaintiff broke a window to provide ventilation and suffered a laceration, which required several surgeries.
In his affidavit in support of the opposition to the summary judgment, plaintiff testified that he initially dealt with Lisam-biance Design, but he was informed in writing that his contract with Lisambiance Design had been assigned to Adcock.[1] Plaintiff stated that he reported to and billed all invoices to Adcock |-¡during the Hotel renovation. Plaintiff claimed that all of his personal dealings were with Mr. Adcock or Adcock employees. Plaintiff attested that there were no written contracts between him and Lisambiance Design or between him and Adcock Construction.[2] Plaintiff explained that Adcock employees assisted him in preparing his work site, including breaking windows and moving the armoires, and that Adcock provided dumpsters for use by J & C.
Adcock filed a motion for summary judgment arguing that Mr. Garrett was not its employee and not entitled to recovery under the Workers’ Compensation Act.[3] Plaintiff opposed the motion, arguing that he was an employee at the time of the accident. Alternatively, plaintiff submitted that he was a borrowed employee, a statutory employee, or an independent contractor engaged in manual labor. Thus, plaintiff concluded that he was entitled to recovery under the Act. After a hearing and a consideration of the record, the Office of Workers’ Compensation determined that Adcock lacked control over J & C and granted the motion for summary judgment filed by Adcock. Mr. Garrett’s timely appeal followed.
STANDARD OF REVIEW:
This Court has consistently noted that the standard of review on a motion for summary judgment is as follows:
Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends. *1138 An appellate court ■ reviews a district court’s decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Under this standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Laffidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.
Steinfelds v. Villarubia, 10-0975, p. 4 (La.App. 4 Cir. 12/15/10), 53 So.3d 1275, 1278-1279, quoting Lingoni v. Hibernia Nat’l Bank, 09-0737, pp. 4-5 (La.App. 4 Cir. 3/3/10), 33.So.3d 372, 375.
DISCUSSION:
Plaintiff argues that the contract between Adcock and the Owner provided that Adcock, would manage the refinishing of the armoires and,. therefore, the language of the contract created a factual issue as to whether Adcock had control over him. This issue of fact precluded the granting of summary judgment. He notes that the trial court determined that Ad-cock lacked control over plaintiff without testimony. Alternatively, plaintiff argues that he is entitled to workers’ compensation benefits as a borrowed servant or an independent contractor engaged in manual labor.
Generally, an employee’s exclusive remedy against his employer for an on-the-job injury is workers’ compensation. La. R.S. 23:1032. “A person rendering service for another in any trades, businesses or occupations covered by. this Chapter is presumed to be an employee under this Chapter.” La. R.S. 23:1044.
The statutory presumption contained in La. R.S. 23:1044 is based on the employer/employee relationship, “the essence of [which] is the right to control.” Hillman v. Comm-Care, Inc., 01-1140, p. 8 (La.1/15/02), 805 So.2d 1157, 1162. Four factors evidencing the right to control are: 1) selection and engagement; 2) payment of wages; 3) power of dismissal; and, 4) power of control. Id. No one factor dominates. Instead, the totality of the circumstances must be considered. | ¡¡Further, the burden of proof is on the party seeking to establish an employer/employee relationship. Id., 01-1140, p. 9, 805 So.2d at 1163.
In reviewing the factors evidencing the right to control, we note that the only written document evidencing the selection and engagement of J & C is the contract between J & C and Lisambiance Design dated July 15, 2008. Adcock entered into a contract with the Owner on July 21, 2008, after the signing of the contract between J & C and Lisambiance Design. Thus, Adcock did not select and hire J & C.
Adcock paid the invoices submitted by J & C for the work performed by plaintiff, then received reimbursement, without any mark-up for administration (as is the industry custom), from the Owner. There is no evidence that Adcock paid wages directly to plaintiff.
There is no evidence that Adcock possessed the power to dismiss plaintiff. Indeed, in an affidavit filed in opposition to the Owner’s motion for summary judgment, plaintiff stated that he worked directly with and reported directly to George Seager, a Prism Hotel employee. In the affidavit submitted in opposition to the motion for summary judgment filed by Adcock, plaintiff stated that he answered directly to Mr. Adcock. “An inconsistent affidavit offered only after the motion for summary judgment [is] filed is not sufficient to create a genuine issue of material *? fact where no justification for the inconsistency is offered.” Bourgeois v. Curry, 05-0211, p. 12 (La.App. 4 Cir. 12/14/05), 921 So.2d 1001, 1009-1010, quoting Douglas v. Hillhaven Rest Home, Inc., 97-0596 (La. App. 1 Cir. 4/8/98), 709 So.2d 1079, 1083. Plaintiff has offered no justification for the inconsistency posed by his conflicting affidavits. Thus, the inconsistent affidavit is not sufficient to create a genuine issue of material fact.
| ^Lastly, Mr. Adcock testified that he did not have the right to exercise control or approve plaintiffs work. Mr. Adcock stated that his company merely provided plaintiff a room in which to do his work. Considering the totality of the circumstances, Adcock did not possess the right to control Mr. Garrett. Hence, there is no statutory presumption of an employer/employee relationship.
Alternatively, plaintiff argues he is entitled to receive workers’ compensation as he was a borrowed servant or an independent contractor engaged in manual labor at the time of his injury.
To determine whether an employee should be considered a borrowed servant[4], jurisprudence has established nine factors to be considered by the court, namely:
1. Who had control over the employee and the work he was performing beyond mere suggestion of details or cooperation?
2. Whose work was being performed?
3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the original employer terminate his relationship with the employee?
6. Who furnished tools and place for performance?
R7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?
Sanchez v. Harbor Const. Co., Inc., 07-0234, pp. 4-5 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 786, quoting Hall v. Equitable Shipyard, Inc., 95-1754, p. 4 (La.App. 4 Cir. 2/29/96), 670 So.2d 543, 545-546. We separately analyze each of these factors.
1. Control
This factor addresses who directly supervises the employee while the work is *1140 being performed. Sanchez, 2007-0284, p. 5, 968 So.2d at 786.
Plaintiff submits that Adcock controlled the renovation project. In his brief, he contends that Adcock paid him, furnished him with supplies and manpower, and coordinated all of the work he performed. However, as noted earlier, plaintiff attested that he worked directly with and reported to George Seager, a Prism Hotel employee. When faced with the instant motion for summary judgment filed by Adcock, plaintiff stated in his affidavit that he answered directly to Mr. Adcock.
Plaintiffs affidavit does not state that Adcock furnished him with supplies, only that Adcock supplied him with use of a dumpster. The record supports that Ad-cock paid invoices submitted by J & C; it did not pay plaintiff directly. The coordination of the work to be performed by plaintiff consisted of providing him with a room to perform refinishing, and moving the refinished armoires back to the guest rooms. This, along with Adcock supplying plaintiff a dumpster, speaks to cooperation, not control of the method and means by which plaintiff performed the refinishing. This factor does not support a finding of borrowed servant status.
2.Whose work
|sMr. Adcock testified that his company is in the business of renovating hotels, not refinishing furniture, and in over twenty-five years, he had never seen a hotel refinish furniture before this job. Plaintiff presented no evidence to refute the affidavit of Mr. Adcock. The work was being performed on the Hotel premises, for the benefit of the Hotel. This factor does not support a finding of borrowed servant status.
3. Agreement
As noted earlier, there was no written agreement between Adcock and J & C. The contract between Adcock and the Owner provided that Adcock would manage the modifications and refinishing of the existing armoires. J & C entered into a contract with Lisambiance Design. While the contract between J & C and Lisambiance Design stated that the contract would be assigned to Adcock, there is no evidence of an agreement, understanding, or meeting of the minds between the original employer, J & C, and the alleged borrowing employer, Adcock. The only factor that would suggest an agreement is that Adcock paid J & C’s invoices. However, because Adcock did not benefit from this arrangement, the factor has no bearing on borrowed servant status.
4. Did the employee acquiesce?
This factor evaluates whether the employee had time to assess the risks of his new work situation and was willing to accept those risks and the new work conditions. Foreman v. Danos & Curole Marine Contractors, Inc., 97-2038, p. 6 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 6. Plaintiff, as owner of J & C, was aware of the work risks and conditions before Adcock entered into the equation. He had signed the contract with Lisambiance Design pri- or to any arrangements being made with Adcock. We find this factor to be neutral.
|95. Did J & C terminate its relationship with plaintiff?
“This factor evaluates the lending employer’s relationship with the employee while the borrowing occurs.” Sanchez, 2007-0234, p. 7, 968 So.2d at 787, citing Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 11 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 6. Clearly J & C, the contracting party, did not terminate *? its relationship with plaintiff, the owner of the company.
6. Who furnished the tools and place?
Plaintiff performed his work in a room designated by Adcock. However, other than a dumpster, there is no evidence that Adcock provided tools or materials that plaintiff used to perform the refinishing. This factor does not support a finding of borrowed servant status.
7. Length of time?
If the length of time the employee has worked for the borrowing employer is considerable, this factor is significant and supports a finding of borrowed servant status. Sanchez, 07-0234, p. 9, 968 So.2d at 788, citing Foreman, 97-2038, p. 7, 722 So.2d at 12.
It was estimated that the renovations took place over four months. “A short term employment will generally require a finding of neutrality as to this factor.” Sanchez, 2007-0234, p. 9, 968 So.2d at 788, citing Foreman, 97-2038, pp. 12-13, 722 So.2d at 7. We find this factor to be inapplicable to the facts of this case because there is no evidence that plaintiff did Ad-cock’s work. The work performed by plaintiff was not work performed as part of Adcock’s regular business.
|in8. Right to discharge?
This factor requires analyzing whether the borrowing employer had the authority to terminate the employee’s services with itself. Sanchez, 07-0234, p. 9, 968 So.2d at 788. In this instance, there is no evidence that Adcock possessed the authority to terminate plaintiffs services, factor does not support a finding of borrowed servant status. Thus, this
9. Obligation to pay?
Under this last factor, the focus is placed on who paid the employee. Sanchez, 07-0234, p. 10, 968 So.2d at 789. “When the borrowing employer pays the lending employer an hourly rate and the lending employer pays from that sum a lower rate to the borrowed employee, a finding of borrowed servant status is supported.” Sanchez, 07-0234, p. 9, 968 So.2d at 788. In this instance, the only evidence introduced regarding payment were invoices submitted to Adcock from J & C. After paying the invoices, Adcock in turn submitted those invoices to the Owner, and received reimbursement for the exact sums paid to J & C. This factor does not support a finding of borrowed servant status. Based on the above analysis, we find that Mr. Garrett did not obtain borrowed servant status.
Next, Mr. Garrett argues that he was an independent contractor performing manual labor. Generally, independent contractors are excluded from workers’ compensation. Under the Workers’ Compensation Act:
“Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
1 uha. R.S. 23:1021(7).
For an independent contractor to be covered under the “manual labor excep *1142 tion”, “he must show that a substantial part of his work time is spent in manual labor in carrying out the terms of his contract with the principal and the work performed by him is part of the principal’s trade, business or occupation.” Steinfelds v. Villarubia, 10-0975, p. 9 (La.App. 4 Cir. 12/15/10), 53 So.3d 1275, 1281, citing Lushute v. Diesi, 354 So.2d 179, 182 (La.1977). “Moreover, the jurisprudence has uniformly defined manual labor’ as work where the ‘physical’ element predominates over the ‘mental’ element.” Id., citing Riles v. Truitt Jones Constr., 94-1224, p. 10 (La.1/17/95), 648 So.2d 1296, 1300.
In this case, plaintiffs work as a furniture refinisher was physical in nature. In his affidavit, plaintiff stated that he considered his work to be a skilled trade that included manual labor. However, the question remains whether the work performed by plaintiff was part of Adcock’s trade, business, or occupation.
“Work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.” La. R.S. 23:1061(A)(1). Stated another way, “[t]he test is whether the person’s services were a substantial, essential and recurring part of the defendant’s regular business. Steinfelds, 10-0975, p. 12, 53 So.3d at 1283, quoting Ross v. Oak Manor Farms, 96-1070, p. 6 (La.App. 5 Cir. 9/17/97), 700 So.2d 906, 908-909.
Mr. Adcock stated that Adcock was in the business of performing hotel renovations, and that in twenty-five years, no hotel had ever requested that furniture be refinished rather than replaced entirely. He further stated that his | ^company was not in the business of refinishing furniture, and was therefore not an integral or essential part of his business.
Plaintiff argued that Adcock was to renovate the hotel, including refinishing the armoires. Thus, refinishing furniture was a part of Adcock’s business.
There is no evidence in the record before us that refinishing furniture was a substantial, essential, and recurring part of Adcock’s regular business. The contract between Adcock and the Owner provided that Adcock would manage the work being done by the refinisher, not that Adcock would actually perform the work. Therefore, we find plaintiff is not an independent contractor entitled to workers’ compensation coverage as an independent contractor performing manual labor.
Lastly, plaintiff argues that he was not provided adequate time to conduct discovery. While Adcock filed its motion for summary judgment on October 17, 2010, a stay was in effect at the time, so the motion was not set for hearing. However, the January 14, 2011 stay order did not prohibit the parties from conducting discovery. It merely stayed proceedings against third-party defendant, D. Earls Company, during the pendency of D. Earls Company’s application for supervisory writ.
On June 6, 2012, the OWC issued a notice that a hearing would be held on Adcock’s motion for summary judgment on August 17, 2012. On August 10, 2012, counsel for plaintiff filed a motion to continue the August 17, 2012 hearing due to a conflict with a previously scheduled hearing. The motion to continue contains no mention of the need to conduct discovery. The OWC continued the hearing until September 14, 2012. At no time did plaintiff ask for additional time to conduct discovery.
| ^Regardless, there is no requirement that discovery be completed prior to a hearing on a motion for summary judgment. Bourgeois, 05-0211, p. 10, 921 *1143 So.2d at 1008. Indeed, a defendant may file a motion for summary judgment at any time. La. C.C.P. art. 966(A)(1). There is no evidence that Adcock prevented discovery from being conducted in some manner. Any need to conduct discovery should have been mentioned in a motion to the OWC. Bourgeois, 05-0211, p. 10, 921 So.2d at 1008.
Accordingly, our de novo review finds that there is no genuine issue of material fact and that Adcock is entitled to summary judgment as a matter of law. We affirm the decision of the OWC granting Adcock’s motion for summary judgment against plaintiff.
AFFIRMED.
LOB RANO, J., Dissents with Reasons.

.We note that the record does not support this statement. Rather, the record indicates that plaintiff signed a contract with Lisambiance Design, which stated that the contract would be assigned to Adcock once Adcock signed its contract with the Owner. There is nothing in writing in the record indicating that this was done; however, Adcock did pay plaintiff's invoices and was reimbursed by the Owner.

. Clearly, this statement is contradictory to his previous statement concerning contracts.

. Previously, both Prism Hotel and Resorts and Canal New Orleans Hotel, L.L.C. were dismissed from the suit via motions for summary judgment.

. La. R.S. 23:1031(0 provides that:
In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer”, and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer”, shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.