I MAMES F. McKAY III, Judge.
The plaintiffs, Phyllis Lewis, Jerry Lewis and Clifton Joseph Simoneaux IV, appeal the judgment of the trial court granting the defendants’, Tulane University Hospital and Clinic and Dr. John Freiberg, motion for summary judgment in this medical malpractice action. We affirm.
FACTS AND PROCEDURAL HISTORY
In November of 1995, Phyllis Lewis underwent a craniotomy to remove a left acoustic neuroma. Subsequently, she began to experience daily severe headaches, which were unresponsive to usual measures. On October 7,1996, she was admitted to Tulane University Hospital and Clinic (Tulane University Hospital). Dr. John Freiberg ordered that she be administered a trial dose of DHE-45 mg intravenously (IV)[1], and Compazine 10 mg IV. As a result of this injection the plaintiff had an anxiety attack; the Compazine was discontinued and Valium and Demerol were given in its place. The physician’s orders were changed to include Phenergan 25 mg to be given with the DHE doses.[2] After the second dose Lof DHE-45/Phenergan TV was administered, the plaintiff complained of chest pains in her sternal area. The attending physician, Dr. Pan, ordered a lk inch Nitroglycerine (NTG) paste to the plaintiffs chest wall, which resulted in all of the plaintiffs pain being resolved. On October 8, 1996, she was administered a third dose of DHE-45/Phenergan IV. After complaining of chest tightness, Dr. Freiberg ordered that the DHE-45 dose be decreased from 1 mg to .5 mg. IV every eight hours. After eight hours she received her fourth dose of DHE-45 .5 mg. *385 IV, without incident. On October 9.1996, she received her fifth dose of DHE-45/ Phenergan IV, as ordered. Later that morning a nurse noted that when the staff attempted to change her TV site, the plaintiff became extremely anxious with visible tremors. Dr. Freiberg, upon being notified of this incident ordered that the DHE-45 be changed from .5 mg. to lmg. intramuscular injection (IM). On October 10, 1996, the second IM injection was given and repeated twice. After the switch to the IM injections, the plaintiff expressed no further chest pain or discomfort. Throughout her stay at Tulane University Hospital her vital signs remained stable. The plaintiff was discharged from Tulane University Hospital with the instructions to administer IM injections of DHE-45 .5mg once daily as needed for headaches. She was also instructed on how to administer the IM injection.
On October 15, 1996, the plaintiff admitted herself to the emergency room at Tulane University Hospital complaining of crushing constant substernal chest pain, lawhich radiated to her left arm. She also complained of shortness of breath and anxiety. The plaintiff admitted that since her discharge she had self-administered the IM injections on at least three occasions. She also admitted that on that morning she had injected herself without first ascertaining whether the needle was in the muscle, in a vein or an artery. After the plaintiff was admitted to Tulane University Hospital an EKG was ordered. The cardiac monitor revealed normal sinus rhythm without ectopy or dysrhythmia. She was given NTG sublingual spray per physician’s order, which relieved her chest pain within thirty seconds. The EKG was read as abnormal but three separate CPK tests were negative for myocardial infarction and established that there was no cardiac damage. She was then admitted to the cardiac care unit, where a cardiac catheri-zation was ordered to rule out underlying coronary disease. The result was that the plaintiff was diagnosed with significant coronary artery disease, specifically a bifurcating lesion involving LAD and the second diagonal branch. Subsequent cath-eterizations revealed 75% stenosis in the mid LAD, which involved the ostium of the second diagonal artery.[3] Following the October 15, 1996 admission, no further DHE was administered to the plaintiff.[4]
On July 20,1999, a medical review panel was convened in this matter. The panel was composed of three doctors, Drs. Terrence C. D’Souza, Kevin L. McKinley and Allan Toupin. The attorney and chair of the panel was Bobby Marzine Harges. The panel after a review of the record criticized Dr. Freiberg for |4not obtaining an evaluation as to the cause of the plaintiffs chest pains during her hospitalization. Nevertheless, the panel also concluded that the choice of DHE was in compliance with appropriate standards of care. The panel further concluded that there was no association between the use of DHE and the development of arterial selerotic coronary disease especially within a few days of its use. The panel opined that although the DHE precipitated the angina in transient EKG changes, no cardiac damage resulted. The panel further opined: “In fact, the use of DHE probably unmasked underlying coronary damage resulting in early appropriate treatment.”
*386 On September 13, 1999, the plaintiff filed this civil suit alleging medical malpractice based on Dr. Freiberg’s breaching the standard of care in her care and treatment by failing to obtain a cardiac workup. On October 25, 2002, after a hearing was held, the trial court granted the defendant’s motion for summary judgment based on the plaintiffs failure to present sufficient evidence to establish a contested issue of material fact as to the issues of causation. The judgment was signed on November 4, 2002.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, | «together with any affidavits, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La. C.C. P. art. 966.
The initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if the movant will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
After the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
I «DISCUSSION
Plaintiffs assert that the trial court erred in dismissing their medical malpractice claim by the granting of summary judgment arguing that there are genuine issues of material fact.
In a medical malpractice action, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La. R.S. 9:2794(A).
With a few exceptions which are clearly distinguishable from the instant case, because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely fail to *387 sustain his or her burden of proving Ms or her claim under La. R.S. 9:2794 without medical experts. Pfiffner v. Correa, 94-0992 (La.10/17/94), 643 So.2d 1228, 1234. In a medical malpractice action, the plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor’s treatment fell below the standard of care expected of a physician in Ms medical speciality, and (2) the existence of a causal relationsMp between the alleged negligent treatment and the injury sustained. Fusilier v. Dauterive, 2000-0151 (La.7/14/00), 764 So.2d 74. TMs is particularly true m a failure to diagnose case such as Pfiffner or the instant case. Thus, the plaintiffs claim m tMs case must be proven by expert testimony. See Russo v. Bratton, 94-2634 (La.App. 4 Cir. 6/29/95), 657 So.2d 777, 785.
17As the court noted in Richardson ex rel. Brown v. Lagniappe Hosp. Corp., 33,378 (La.App. 2 Cir. 5/15/00), 764 So.2d 1094 (FN2):
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence .... This is especially true where the defendant physician has filed a motion for summary judgment supported with expert opinion evidence that his treatment met the applicable standard of care.
Richardson, 33-378, at p. 5, 764 So.2d at 1098-99. Additionally, La.C.C.P art. 966 C(2) specifically requires the plaintiffs to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden at trial.
In the case sub judice, the plamtiffs relied on Dr. Terrence D’Souza’s July 16, 2002 deposition testimony to support their position that Dr. Freiberg’s alleged breach of the standard of care in failing to discover the source of Ms. Lewis’s cardiac problems resulted in damages. Although, Dr. D’Souza agreed that the failure to do a cardiac work-up on Ms. Lewis did not result in cardiac damage, he acknowledged that the admimstration of DHE did precipitate angina and EKG changes with resulting pain. He further opined that he was unaware of any long-term effects from the administration of DHE. When taken in conjunction with the opmion of the medical review panel, the plaintiffs’ sole reliance on tMs testimony was misgmded in that it is insufficient to rebut the defendants’ evidence; the opmion and findings of the medical review panel as a whole. Plaintiffs have failed to meet their burden of proving the causal connexity between Dr. Freiberg’s actions or inactions and Ms. Lewis’s cardiac condition.
|sIn support of the motion for summary judgment, the defendants submitted the opinion and reasons of the medical review panel together with the deposition testimony of Dr. Terrence D’Souza, a panelist. Based on the uncontroverted expert medical testimony established, they assert that there was no causative link between the acts of Dr. John Freiberg and the damages mcurred by Ms. Lewis. While the medical review panel criticized Dr. John Freiberg for not obtaining an evaluation as to the cause of Ms. Lewis’ chest pain dur-mg her hospitalization, the panel found that all aspects of the treatment protocol during hospitalization including the choice of DHE were in compliance with the appropriate standard of care. In essence the plaintiffs failed to establish that any alleged breach of the standard of care provided by Dr. John Freiberg caused any damage to Ms. Lewis.
*388 Hence, the plaintiffs produced no specific facts showing the existence of a genuine issue of material fact for trial to defeat the defendants’ motion for summary judgment. They did not establish that they could satisfy their evidentiary burden at trial. Their assigned error has no merit.
Accordingly, we find no error in the trial court’s judgment granting the defendants’ summary judgment motion. The judgment is affirmed.
AFFIRMED.

. Dihydroergotamine (DHE)

. The plaintiff, at the time of her admission to Tulane University Hospital was on a number of drugs including: Tegretol 200 mg. BID; Nortriptyline 50 Mg. X2 at bedtime; Esgic Plus 1 or 2 tablets BID as needed; and Trim-terene BID. Furthermore, the plaintiff was being treated by a psychiatrist, Dr. Mangat, and was having anxiety or panic attacks, which led to emergency room treatments once to twice a month prior to this incident.

. The plaintiff received subsequent catheteri-zations at Slidell Memorial Hospital, which showed 99% stenosis or narrowing of the LAD artery, at the origin of the second diagonal.

. Plaintiff continues to receive treatment for her severe coronary artery disease.