Judge Rosemary Ledet
This is a medical malpractice suit. The plaintiff, Jean McKeogh, filed this suit against the following five defendants: (i) Michael O'Brien ("Dr. O'Brien"), an orthopedic surgeon; (ii) The Administrators of the Tulane Educational Fund, d/b/a Tulane University School of Medicine ("Tulane EDU"), Dr. O'Brien's employer; (iii) Robin Silverman ("Ms. Silverman"), a licensed physical therapist; (iv) University Healthcare System, L.C., d/b/a Tulane University Hospital & Clinic ("TUHC"), Ms. Silverman's employer; and (v) Health Care Indemnity, Inc., Ms. Silverman's insurer. Two of the defendants, Dr. O'Brien and Tulane, filed a motion for summary judgment. The trial court granted the motion. From that judgment, Ms. McKeogh appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On March 5, 2014, Dr. O'Brien performed a total shoulder arthroplasty on Ms. McKeogh's left shoulder.[1] Dr. O'Brien saw Ms. McKeogh for her office visits, including her post-operative care, at the *1067 Tulane Institute of Sports Medicine ("TISM"), an uptown satellite clinic of TUHC located on Tulane University's campus. As part of her post-operative care, Dr. O'Brien prescribed physical therapy. For convenience, Dr. O'Brien's patients frequently opted to have such prescribed therapy at TUHC's Physical Therapy Department (the "PT Department"), which was located in the same building as the TISM but in a separate suite. Ms. McKeogh opted to do so.
On May 9, 2014, Ms. McKeogh returned to Dr. O'Brien and reported that she believed she was injured during physical therapy four days earlier. Dr. O'Brien ordered a CT Arthrogram of Ms. McKeogh's left shoulder, which was performed ten days later. The CT Arthrogram revealed a non-displaced fracture involving the coracoid process anteriorly. Ultimately, Ms. McKeogh developed a "frozen shoulder" and underwent a second surgical procedure on April 1, 2015.
Ms. McKeogh filed a complaint requesting a medical review panel ("MRP").[2] In her complaint, Ms. McKeogh's allegations regarding Dr. O'Brien were as follows:
• Failure to properly communicate with and monitor SILVERMAN in the methods of physical therapy that she was applying to PETITIONER;
• Failure to ascertain that SILVERMAN was qualified to perform physical therapy manipulations on a person with a condition such as that which afflicted PETITIONER;
• Failure to exercise reasonable care to inform, instruct and train SILVERMAN in proper physical therapy methods to be applied to petitioner who had under gone a complex shoulder replacement procedure; and
• Failure to use reasonable care and diligence in ascertaining the condition of PETITIONER post-surgery and determining [the] proper course of action in treating PETITIONER post-surgery.
On February 23, 2016, the MRP rendered its opinion. As to Ms. Silverman, the MRP found the evidence supported the conclusion that she failed to meet the applicable standard of care, as alleged in the complaint.[3] As to Dr. O'Brien, Tulane EDU, and TUHC, the MRP found that the evidence did not support the conclusion that they failed to meet the applicable standard of care, as alleged in the complaint.[4] Ms. McKeogh then commenced *1068 this suit. In her petition, she repeated the allegations she made before the MRP, including that Dr. O'Brien and Tulane EDU were vicariously liable for Ms. Silverman's actions.
On October 4, 2016, Dr. O'Brien and Tulane EDU filed a motion for summary judgment.[5] Dr. O'Brien's motion for summary judgment was premised on the following two grounds: (i) Ms. McKeogh's lack of an expert to establish medical malpractice;[6] and (ii) her lack of evidence of an employer-employee relationship between him and Ms. Silverman to establish vicarious liability for Ms. Silverman's alleged malpractice.[7] In opposing the motion, Ms. McKeogh acknowledged that she was not contending Dr. O'Brien's active negligence (medical malpractice) caused her injuries; however, she contended that there was a genuine issue of material fact as to Dr. O'Brien's right to control Ms. Silverman, precluding summary judgment on her vicarious liability claim against them.[8]
In support of their position that Ms. Silverman was not an employee of Tulane EDU, Dr. O'Brien offered the affidavit of Patricia Bethancourt, Tulane EDU's associate general counsel, and Dr. O'Brien's deposition testimony. In her affidavit, Ms. Bethancourt attested to the following facts regarding the legal relationships between the parties:
• [Tulane EDU] owns and operates the Tulane University School of Medicine.
• [Tulane EDU] does not own or operate Tulane University Hospital and Clinic [the "Hospital"]. In 1995, the Hospital was sold to [TUHC]. Since 1995, [TUHC] has been a separate legal entity not under the control of [Tulane EDU].
• Dr. Michael O'Brien is employed by [Tulane EDU].
• [Tulane EDU] does not own or operate [TUHC's PT Department] and does not employ the physical therapists. The physical therapists working at [TISM] are employed by [TUHC].
• Neither Dr. O'Brien nor [Tulane EDU] has any authority to hire, fire, train, or supervise employees of [TUHC] working in the [PT Department].
*1069 In his deposition, Dr. O'Brien echoed Ms. Bethancourt's attestations regarding the parties' legal relationships. Dr. O'Brien testified that he has an office where he sees patients both at Tulane Medical School downtown and at the TISM uptown. Dr. O'Brien explained that the TISM is owned by TUHC.[9]
In opposition to the motion for summary judgment, Ms. McKeogh offered the following evidence: two affidavits by Ms. McKeogh; an affidavit by an orthopedic surgeon, Dr. Thomas Lyons; an affidavit by a physical therapist, Dr. T. Kirk Nelson; and an affidavit by her attorney, Bernard Bagert, Jr.[10] In response, Dr. O'Brien filed a motion to exclude Ms. McKeogh's affidavits. As discussed elsewhere in this opinion, the only affidavit the trial court examined at the hearing was Dr. Lyons' affidavit, which the trial court excluded in part.
Following the hearing, the trial court granted the motion for summary judgment, giving the following oral reasons:
Louisiana Civil Code Article 2320 imposes liability on the employer only for those acts of its employee which it might have prevented, not the acts of third parties.
The affidavit of Patricia Bethancourt, which was submitted, confirmed that [Tulane EDU] do[es] not operate TUHC.
Miss McKeogh has not offered any evidence to rebut the testimony or the affidavit of Mrs. Bethancourt and Dr. O'Brien that the physical therapist Silverman was not an employee of [Tulane EDU].
This appeal followed.[11]
DISCUSSION
Although Ms. McKeogh asserts numerous assignments of error, we find one dispositive-whether the trial court erred in granting summary judgment. The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).[12]
*1070 The applicable standard of review is de novo " 'under the same criteria governing the trial court's consideration of whether summary judgment is appropriate.' " Citron v. Gentilly Carnival Club, Inc ., 14-1096, p. 12 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 313 (quoting D'Angelo v. Guarino , 10-1555, p. 3 (La. App. 4 Cir. 3/9/12), 88 So.3d 683, 686 ).
This standard of review requires that an appellate court resolve the following two issues: (i) whether there is any genuine issue of material fact; and (ii) whether the mover is entitled to judgment as a matter of law. Citron , 14-1096 at pp. 12-13, 165 So.3d at 313 ; see also Williams v. Archer W. Constr., LLC , 16-0158, p. 3 (La. App. 4 Cir. 10/5/16), 203 So.3d 325, 328. Stated more precisely, this standard of review requires an appellate court to look at "the motion, memorandum, and supporting documents" to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) (providing that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law").[13]
The burden of proof rests with the mover; however, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). Instead, the mover must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Id. "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." Id.
"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate." Johnson v. Loyola Univ. of New Orleans , 11-1785, p. 7 (La. App. 4 Cir. 8/8/12), 98 So.3d 918, 923. "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." Id. The determination of whether a fact is material turns on the applicable substantive law. Smith v. Our Lady of the Lake Hosp., Inc. , 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.
The applicable substantive law here, as the trial court recognized, is vicarious liability. The vicarious liability concept is codified in La. C.C. art. 2320, which provides as follows:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed....
*1071 In the above cases, responsibility only attaches, when the masters or employers ... might have prevented the act which caused the damage, and have not done it.
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.
In order to fall within the ambit of La. C.C. art. 2320, "the plaintiff must show the existence of an employer-employee relationship. In evaluating the sufficiency of such proof, courts have been mindful that, by its nature, vicarious liability mandates strict construction." Roberts v. State, Through Louisiana Health & Human Res. Admin. , 404 So.2d 1221, 1225 (La. 1981).
This court, in Marchetta v. CPC of Louisiana, Inc. , 99-0485, p. 6 (La. App. 4 Cir. 3/22/00), 759 So.2d 151, 155, a medical malpractice case, observed that "[t]he 'single most important factor' for determining whether an employer-employee relationship exists is 'the right of the employer to control the work of the employee.' " Id. (quoting Roberts , 404 So.2d at 1225 ). "In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists." Iteld v. Four Corners Const., L.P. , 12-1504, p. 31 (La. App. 4 Cir. 6/5/13), 157 So.3d 702, 721.
The jurisprudence has identified the following four principal evidentiary factors to be considered in deciding whether an employer-employee relationship exists: (i) the right of control or supervision, (ii) the selection and engagement of the workers, (iii) the payment of wages, and (iv) the power of dismissal. See Remet v. Martin , 97-0895, pp. 4-5 (La. App. 4 Cir. 12/10/97), 705 So.2d 1132, 1135 ; Iteld, 12-1504 at pp. 31-32, 157 So.3d at 721. Stated differently, "[t]he right of control necessarily encompasses supervision, selection and engagement, payment of wages or salary and the power to dismiss." Che v. First Assembly of God, Ruston, LA , 50,360, pp. 10-11 (La. App. 2 Cir. 1/13/16), 185 So.3d 125, 133.
To support his motion, Dr. O'Brien submitted, among other things, Ms. Bethancourt's affidavit and Dr. O'Brien's deposition testimony, which established the lack of an employee-employer relationship between him and Ms. Silverman. Based on our de novo review, we find that Dr. O'Brien made a prima facie showing that there was an absence of factual support for an essential element of the vicarious liability claim. The burden thus was on Ms. McKeogh to produce evidence that a genuine issue of material fact remains.
Ms. McKeogh contends that the trial court erred in failing to find that the evidence she submitted was sufficient to create a genuine issue of material fact and that she met her burden. The gist of Ms. McKeogh's argument is that, despite Ms. Silverman's status as a payroll employee of a third party (TUHC),[14] sufficient evidence was presented to create a genuine *1072 issue of material fact as to whether Dr. O'Brien had the right to control Ms. Silverman. The evidence Ms. McKeogh relies upon in support of her contention is three-fold-Dr. O'Brien's deposition testimony, her own affidavits, and Dr. Lyons' affidavit.
Dr. O'Brien's deposition
Ms. McKeogh contends that the trial court erred in failing to consider Dr. O'Brien's statements in his deposition acknowledging his control over how Ms. Silverman performed her job. Viewed in context, Dr. O'Brien contends that his deposition testimony belies this contention. We agree. The full excerpts of Dr. O'Brien's testimony on which Ms. McKeogh relies are as follows:
• "I don't really have supervision of their physical therapy. I'm never present. I'm not their boss. I'm not in charge of making sure the physical therapist is capable of performing the rehabilitation. So if you're asking would I abandon their supervision, I don't think I have the position of supervising the physical therapist because I never directly supervise them. I'm not there during their physical therapy visits."[15]
• "There's communication between the physicians and the therapists, especially if there are any challenges, whether it's a challenge in rehabilitation that the patient is experiencing or a new injury or a change in the rehab plan. Because we work in such close proximity, it would be common for a therapist to come speak with me or me go speak with a therapist because it's less than a minute away. That being said, it's not my job to micromanage the physical therapists. I trust that the physical therapists are all adequately trained, especially in the care of a postoperative orthopedic patient, that if I send an order with guidelines, I assume they will be able to follow those guidelines. So I don't try and micromanage the way that they do their exercises. If I find that a therapist is not doing what I ask, either too much or too little and a patient is unhappy with their progress in therapy, I will suggest that they go elsewhere for therapy. That's true whether if it's at TUHC or Ochsner or any private physical therapy office."
Dr. O'Brien's deposition testimony establishes that he lacked the authority to direct, control, or dismiss a physical therapist employed by a third party such as TUHC. As Dr. O'Brien contends, the only "control" that he had over the physical therapists working in TUHC's PT Department was to recommend his patients to another physical therapy center
Ms. McKeogh's affidavits
In an attempt to establish Dr. O'Brien had control, Ms. McKeogh also cites two statements from her second affidavit. The first statement she cites is that "[o]n May 5, 2015 [Ms. Silverman's] replies to my complaints and my request that she stop was 'I'm doing this because this is what Dr. O'Brien told me to do.' " The *1073 statement quoting what Ms. Silverman told Ms. McKeogh is hearsay. The hearsay exception in La. C.E. art. 801(D) for a statement offered against a party, which Ms. McKeogh cites, is inapplicable; the statement is Ms. Silverman's, not Dr. O'Brien's, statement. See La. C.E. art. 801(D)(2) (providing that "[a] statement is not hearsay if: ... [t]he statement is offered against a party and is: (a) [h]is own statement"). Although Ms. Silverman is a party to the suit, she is not a party to Dr. O'Brien's motion for summary judgment.
The second statement Ms. McKeogh cites is as follows:
After Dr. O'Brien finally realized that my shoulder bone had been fractured in physical therapy by Robin Silverman he stated: "I didn't do this." He also stated "I should have supervised Robin more closely." This clearly demonstrated that he exercised control over Robin Silverman and also possessed the right to exercise control over her treatment of me.
Unlike the first statement, the second statement is Dr. O'Brien's alleged statement that he "should have supervised Robin [Silverman] more closely." Even assuming, arguendo , that the statement is competent summary judgment evidence,[16] the statement is insufficient to create a genuine issue of material fact. The statement, at best, would create a genuine issue of fact on a claim of independent fault in supervising an employee; however, the claim Ms. McKeogh is asserting is a vicarious liability claim. See Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 13-2 (1996) ("TORT LAW") (noting "it is important to distinguish between the employer's vicarious liability *1074 and his independent fault in hiring, retaining or supervising an employee"). In sum, the statement alone, without any evidence of an employer-employee relationship, is insufficient to create a triable issue of fact.
Dr. Lyons' affidavit
Ms. McKeogh contends that the physical proximity of the physician and the physical therapist is a fact that should be weighed in making the determination of control. Ms. McKeogh cites Dr. Lyons' affidavit for the proposition that a physician generally retains the right to control a physical therapist who works in the same location. In particular, she cites the following statement by Dr. Lyons:
[I]t is typical and customary for a treating orthopedist to retain the right to exercise control over the actions of the physical therapist when a patient is receiving physical therapy at the same location as the office of the treating orthopedist who both performed the surgery and ordered the physical therapy.[17]
Although Dr. Lyons' affidavit is devoid of any reference to the facts of this case, Ms. McKeogh emphasizes that Dr. O'Brien's office was only a few steps away from the location where Ms. Silverman injured her.[18] Ms. McKeogh's physical proximity argument is unpersuasive for two reasons.
First, at the hearing on the motion for summary judgment, the trial court expressly found that Dr. Lyons was not competent to make the statement regarding the legal relationship between Dr. O'Brien and Ms. Silverman. The trial court reasoned that although Dr. Lyons was qualified, as an expert, to testify as to the standard of care of other orthopedists in the area, he was not qualified to testify regarding the vicarious liability issue. Stated otherwise, the trial court reasoned that Dr. Lyons was not qualified to make a "legal conclusion"-a "vicarious liability statement"-regarding the relationship between a physical therapist and an orthopedic surgeon. We agree.
Second, Ms. McKeogh's physical proximity argument is not supported by the jurisprudence. See Hull v. Jefferson Par.Hosp. Dist. No. 1 , 16-273 (La. App. 5 Cir. 4/26/17), 220 So.3d 838.[19] The Hull case is instructive.
In Hull , supra , the plaintiff asserted a vicarious liability claim against West Jefferson Medical Center ("WJMC") based on the negligence of a physical therapist, Ms. Joseph, who worked at WJMC's hospital for a third party, RehabCare. WJMC had a contract with RehabCare for the services. The plaintiff contended that because WJMC provided the building, leased the space and equipment for the rehabilitation facility, and provided guidelines for staffing, it sufficiently controlled RehabCare such that Ms. Joseph was an employee of WJMC. The plaintiff also contended that WJMC, on its website, promoted the rehabilitation facility as being owned and operated *1075 by WJMC and failed to disclose that it was staffed by a third party.
Affirming the trial court's grant of WJMC's motion for summary judgment, the appellate court in Hull rejected the apparent authority argument and found that WJMC had produced sufficient evidence to establish that it was not vicariously liable for Ms. Joseph's negligent acts. Hull , 16-273 at p. 8, 220 So.3d at 845. As in Hull , we reject Ms. McKeogh's apparent authority argument based on the mere physical proximity of Dr. O'Brien's office and TUHC's PT Department.
In sum, none of the evidence Ms. McKeogh relies upon is sufficient to controvert the evidence that Dr. O'Brien submitted, establishing the lack of an employment relationship between him and Ms. Silverman. Ms. Silverman is a physical therapist who was employed by another party, TUHC, not by Dr. O'Brien or his employer, Tulane EDU. Dr. O'Brien had no supervisory role over Ms. Silverman; Dr. O'Brien could not hire, fire, train, supervise, or otherwise direct Ms. Silverman's actions. As Dr. O'Brien contends, Ms. McKeogh's vicarious liability claim is premised on a misunderstanding of the legal relationship of the parties. Dr. O'Brien thus established the lack of a genuine issue of material fact, entitling him to summary judgment.
DECREE
For the foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED

An arthroplasty is a "surgical operation to repair a joint, to replace a joint." P.H. Collin, DICTIONARY OF MEDICINE (3d ed. 2000).

Ms. McKeogh filed multiple requests for an MRP. Her initial request for an MRP was filed with the Louisiana Patient's Compensation Fund on October 9, 2014; she filed supplemental complaints thereafter. The same defendants were named in the complaints as in this suit.

As to Ms. Silverman, the MRP reasoned:
1. It is a breach of the standard of care not to appropriately note and chart therapy performed on the patient. There was a lack of range of motion, pain level, and exercises that were performed.
2. The panel does not believe that starting the resistive exercises two weeks early contributed to the patient's complaint.
3. The panel cannot determine whether or not the non-displaced coracoid fracture occurred during the physical therapy session.

As to Dr. O'Brien, the MRP reasoned:
1. Dr. O'Brien's treatment of the patient post-surgery was appropriate.
2. Dr. O'Brien ordered the appropriate physical therapy.
3. Dr. O'Brien timely diagnosed the non-displaced coracoid fracture and treated the patient appropriately.
As to both Tulane EDU and TUHC, the MRP reasoned that "[t]here is nothing in the record presented to the panel to review that indicates a deviation from the standard of care."

For ease of discussion, we refer in the remainder of this opinion to Dr. O'Brien and his employer, Tulane EDU, collectively as "Dr. O'Brien" unless otherwise indicated. The other three defendants-Ms. Silverman, TUHC, and Health Care Indemnity, Inc.-did not file a motion for summary judgment. Although they filed an appellee brief, their brief was confined to the issue of Ms. McKeogh's "motion to suppress" the MRP opinion, which, for reasons explained elsewhere in this opinion, we do not reach.

Dr. O'Brien contended that Ms. McKeogh could not establish a medical malpractice claim against him without a qualified expert defining the applicable standard of care, establishing that he breached the standard, and establishing that his breach of the standard caused her injuries. See Lewis v. Tulane Univ. Hosp. & Clinic , 03-0184, p. 6 (La. App. 4 Cir. 8/27/03), 855 So.2d 383, 387 (citing Pfiffner v. Correa , 94-0992, pp. 9-11 (La. 10/17/94), 643 So.2d 1228, 1234 ) (observing that "with a few exceptions which are clearly distinguishable from the instant case, because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely fail to sustain his or her burden of proving his or her claim under La. R.S. 9:2794 without medical experts").

Dr. O'Brien contended "[t]here is no legal theory under the Louisiana Medical Malpractice Act where[by] a physician can be held liable for the independent acts of a physical therapist not employed by the physician and working for a third party."

Given her concession, Ms. McKeogh contended that "La. R.S. 9:2794 and the Pfiffner case are inapplicable here because she does not contend that her injury was inflicted by the active negligence of [DR.] O'BRIEN."

Dr. O'Brien testified that, after the time period at issue in this case, TUHC opted to outsource its PT Department to a third party.

Ms. McKeogh's attorney's affidavit pertained to the issue of her "Motion to Suppress" the MRP opinion. The gist of her motion to suppress was that the MRP opinion was invalid because it was reached before any of the members of the panel could hear from the parties, in contravention of the requirements of La. R.S. 40:1231.8(G). As noted elsewhere in this opinion, Ms. McKeogh only disputes the grant of summary judgment as it pertains to Dr. O'Brien's vicarious liability for Ms. Silverman's acts. When, as here, the issue is one of a medical provider's vicarious liability for another medical provider, the jurisprudence has recognized that "[m]edical testimony has no bearing upon this legal basis for potential liability." Arroyo v. E. Jefferson Gen. Hosp ., 06-799, p. 8 (La. App. 5 Cir. 3/13/07), 956 So.2d 661, 665. For this reason, we pretermit addressing the issue Ms. McKeogh raises regarding the trial court's interlocutory ruling denying her "Motion to Suppress" the MRP's opinion.

Ms. McKeogh also filed a motion for new trial for "re-argument only." In her motion, she again conceded that she was not seeking to argue the injuries she suffered were caused by Dr. O'Brien's personal, active negligence; rather, she was confining her argument to the vicarious liability issue. She contended that there was a genuine issue of material fact as to whether the fault of Ms. Silverman could be imputed to Dr. O'Brien. The trial court denied the motion.

In 2015, the Louisiana Legislature amended La. C.C.P. art. 966"to provide for certain procedures at the hearing on a motion for summary judgment; to provide for the filing and consideration of certain documents; to provide for the burden of proof; and to provide for related matters." Acts 2015, No. 422, § 1. The 2015 amendment became effective on January 1, 2016. Because the motion for summary judgment was filed on October 4, 2016, the amended article applies here.

The supporting documents allowed for purposes of summary judgment are enumerated in La. C.C.P. art. 966(A)(4) as follows:
The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

Ms. McKeogh contends that the trial court erred in failing to consider the statements in her second affidavit directly disputing Ms. Bethancourt's attestations regarding Ms. Silverman's employer. Ms. McKeogh, however, failed to aver that she had any first-hand knowledge of the legal relationship between the parties; thus, she was not competent to attest on this issue. See La. C.C.P. art. 967(A) (providing that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

Dr. O'Brien emphasizes that under La. C.C. art. 2320, vicarious liability only attaches when masters or employers might have prevented the act and that "[h]ere the clear uncontroverted testimony is that Dr. O'Brien is never present in the TUHC PT suite during therapy sessions." In the trial court, Dr. O'Brien's counsel noted that Ms. McKeogh was "essentially arguing for a type of captain of the ship doctrine application," which Louisiana courts have rejected. See Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 13-2(d)(1) (1996) (noting that "Louisiana has held that in an action against a doctor for the fault of a hospital employee, the plaintiff must establish that the doctor exercise actual control over a defalcating assistant") (emphasis in original).

This statement did not appear in Ms. McKeogh's first affidavit, which simply states that Dr. O'Brien said "I didn't do this." Her second affidavit is, thus, arguably inadmissible as "[a]n inconsistent affidavit offered only after the motion for summary judgment was filed." Bourgeois v. Curry , 05-0211, pp. 12-13 (La. App. 4 Cir. 12/14/05), 921 So.2d 1001, 1009-10 (collecting cases). In Bourgeois , this court noted that this principle is applied "to prevent the too easy thwarting of summary judgment procedure by the mere filing of affidavits contradicting the inconvenient statements found in previous deposition testimony when the mover has no opportunity to cross-examine the witness concerning the inconsistencies and the trial court is prevented from weighing evidence by the rules of summary judgment." Id.
Dr. O'Brien also points out that Louisiana has adopted an "apology" exception to the hearsay rule allowing the introduction of health care provider's apology into evidence as non-hearsay admissions or statements against interest. The apology exception is set forth in La. R.S. 13:3715.5, which provides as follows:
Any communication, including but not limited to an oral or written statement, gesture, or conduct by a health care provider expressing or conveying apology, regret, grief, sympathy, commiseration, condolence, compassion, or a general sense of benevolence made to a patient, a relative of the patient, or an agent or representative of the patient, shall not constitute an admission as defined in Code of Evidence Article 801(D)(2) or a statement against interest as defined in Code of Evidence Article 804(B)(3), and shall not be admissible in evidence to establish liability or for any other purpose, including impeachment, in a medical review panel proceeding, arbitration proceeding, or civil action brought by or on behalf of the patient or by or on behalf of an heir, survivor, statutory beneficiary, or agent or representative of the patient against the health care provider who made the communication. A statement of fault, however, which is part of, or in addition to, any such communication shall not be made inadmissible pursuant to this Section.
Although in her briefs to this court Ms. McKeogh refers to the statement as Dr. O'Brien's "apology," she argues that the statement is an admissible "statement of fault" and thus within the exception to the statute. We note, but find it unnecessary to decide, the "apology-admission dichotomy" issue.

The same statement appears in the affidavit of Dr. Nelson that Ms. McKeogh submitted. Dr. Nelson, like Dr. Lyons, was not competent to make the statement.

In her second affidavit, she describes the location as "only a few yards away." Likewise, Dr. O'Brien testified in his deposition that walking at a normal pace from his office to the PT Department would take "[l]ess than a minute."

Her argument is really an apparent authority argument, albeit not couched as such. See Campbell v. Hosp. Serv. Dist. No. 1, Caldwell Par ., 33,874, pp. 9-10 (La. App. 2 Cir. 10/4/00), 768 So.2d 803, 810 (observing that "an apparent, or ostensible agency is created by a hospital 'holding itself out' as a full service facility and creating the image that its physicians are employees of the hospital" and collecting cases).